ORIGINAL
FILED

07 OCT 30 AM 11: 12

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   GEORGE G. WEICKHARDT (SBN 58586)
2   PAMELA J. ZANGER (SBN 168356)
    **ROPERS, MAJESKI, KOHN & BENTLEY PC**
    201 Spear Street, Suite 1000
3   San Francisco, CA 94105
    Telephone:   (415) 543-4800
4   Facsimile:   (415) 972-6301
    Email:       gweickhardt@ropers.com
5
6   Attorneys for Defendant
    CHASE BANK USA, N.A., formerly known as CHASE
    MANHATTAN BANK USA, N.A. and erroneously sued
7   herein as THE CHASE MANHATTAN BANK

8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13  MARTHA CARMACK,                        CASE NO.  C07 03464 WHA

14              Plaintiff,                 Related to Case No. C07 2124 WHA

15      v.                                 **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
16  THE CHASE MANHATTAN BANK,              MOTION TO CONFIRM
                                           ARBITRATION AWARD, OR IN THE
17              Defendant.                 ALTERNATIVE, MOTION FOR
                                           JUDGMENT ON THE PLEADINGS
18                                         OR, IN THE ALTERNATIVE,
                                           MOTION FOR SUMMARY
19  CHASE BANK USA, N.A.,                  JUDGMENT**

20              Counter-complainant,       **Date:**    **December 6, 2007**
                                           **Time:**    **8:00 a.m.**
21      v.                                 **Ctrm.:**   **9, Hon. William H. Alsup**

22  MARTHA CARMACK,

23              Counter-defendant.

24

25

26

27

28

MEMORANDUM OF POINTS AND
                                                          AUTHORITIES

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | UNDISPUTED FACTS | 2 |
| III. | THE "NAES" | 8 |
| IV. | PROCEDURAL HISTORY | 10 |
| V. | THE EVIDENTIARY STANDARD TO BE APPLIED TO THIS MOTION | 10 |
| VI. | COLLATERAL ESTOPPEL OF THE JUDGMENT IN CARMACK I | 11 |
| VII. | IT WAS ACTUALLY DETERMINED IN CARMACK I THAT PLAINTIFF'S PURPORTED NOTICE OF BILLING ERROR DOES NOT CONSTITUTE A VALID NOTICE OF BILLING ERROR UNDER 15 U.S.C. § 1666 | 12 |
| VIII. | THE CLAIM OF DEPRIVATION OF DUE PROCESS WAS ACTUALLY DECIDED ADVERSELY TO PLAINTIFF IN CARMACK I | 12 |
| IX. | CARMACK INDISPUTABLY AGREED TO BINDING ARBITRATION | 13 |
|  | A.   An Agreement To Arbitrate Is Specifically Enforceable Under The Federal Arbitration Act | 13 |
|  | B.   Plaintiff Agreed To Arbitrate The Claims Alleged In The Complaint | 14 |
|  | 1.   Enforceability Under Delaware Law | 15 |
|  | 2.   Enforceability Under California Law | 16 |
|  | C.   Plaintiff Is Bound By The Decision Of The Arbitrator That An Agreement To Arbitrate Disputes Existed | 18 |
| X. | THE ARBITRATION AWARD SHOULD BE CONFIRMED | 18 |
| XI. | THE ARBITRATION AWARD BARS THE CLAIMS MADE HEREIN UNDER THE DOCTRINE OF RES JUDICATA | 19 |
| XII. | CONCLUSION | 20 |

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

# TABLE OF AUTHORITIES

Page

## ~~FEDERAL CASES~~

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................................. 18

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126 (9th Cir. 2000) ...................... 14

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002) ............................................ 12, 14

*Clark v. Bear Stearns & Co.*, 996 F.2d 1318 (9th Cir. 1992) ...................................................... 11

*Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997) ..................... 1, 12

*In re Exxon Valdez*, 270 F.3d 1215 (9th Cir. 2001) ................................................................. 11

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).................................................................................................................. 14

*Southland v. Keating*, 465 U.S. 1 (1984) ................................................................................. 13

*Ticknor v. Choice Hotels International, Inc.*, 265 F.3d 931 (9th Cir. 2001) ............................. 18

*Woods v. Saturn Distribution Corp.*, 78 F.3d 424 (9th Cir. 1996) ........................................... 19

## STATE CASES

*Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998).............................................................. 16

*Bleeck v. State Board of Optometry*, 18 Cal. App. 3d 415 (1971) ................................................ 20

*Border Bus. Park, Inc. v. City of San Diego*, 142 Cal. App. 4th 1538 (2006)............................. 20

*Busch v. Globe Industrial*, 200 Cal. App. 2d 315 (1962).............................................................. 17

*Discover Bank v. Superior Court*, 134 Cal. App. 4th 886 (Dec. 7, 2005) .................................... 15

*Durgin v. Kaplan*, 68 Cal. 2d 81 (1968) .................................................................................... 17

*Edelist v. MBNA America Bank*, 790 A.2d 1249 (Del. Super. Ct. 2001)...................................... 16

*Graham v. State Farm Mutual Automobile Insurance Co.*, 565 A.2d 908 (Del. 1989)................. 14

*Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699 (1976) ................................................. 17

*Marin Storage & Trucking v. Benco Contracting Engineering*, 89 Cal. App. 4th 1042 (2002)........................................................................................................................................ 17

*SBC Interactive, Inc. v. Corporate Media Partners*, 714 A.2d 758 (Del. 1998) .......................... 14

*Thibodeau v. Crum*, 4 Cal. App. 4th 749 (1992)........................................................................ 20

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**TABLE OF AUTHORITIES**
(continued)

Page

*Vandenberg v. Superior Court (Centennial Insurance Co.)*, 21 Cal. App. 4th 815 (1999).......... 20

*Washington Mutual Bank, F.A. v. Superior Court (Briseno)*, 24 Cal. 4th 906 (2001) ........... 14, 15

**DOCKETED CASES**

*Carmack v. The Chase Manhattan Bank*, Case No. C07 2124 WH A ("*Carmack I*")................... 1

**FEDERAL STATUTES**

9 U.S.C. § 9 ................................................................................................................ 11

9 U.S.C. §§ 9, 10............................................................................................................ 13

15 U.S.C. § 1666............................................................................................. 1, 8, 10, 12

Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1-16 ........................................ 4, 6

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq ........................... 13

Truth in Lending Act, 15 U.S.C. § 1601 et seq.......................................... 10

**STATE STATUTES**

California Civil Code, § 1589 ..................................................................... 17

California Civil Code § 1698 ....................................................................... 16

California Code of Civil Procedure, § 1280........................................... 14

Delaware Code, § 952 ................................................................................. 15

**TREATISES**

18 C. Right, A. Miller & E. Cooper, Federal Practice and Procedure, § 4402
    (1981) ................................................................................................ 11

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

## I.  **INTRODUCTION**

The complaint in the present case is almost a carbon copy of the complaint in the earlier action entitled *Carmack v. The Chase Manhattan Bank*, Case No. C07 2124 WHA ("*Carmack I*"). Judgment against Martha Carmack was entered in that action on August 31, 2007, after the court had granted summary judgment in favor of the defendant.  No appeal was taken and that judgment is now final.

The only significant difference between the present action and *Carmack I* is that the present action involves a different credit card account.  The first "count" in the present case alleges that Carmack sent a notice of billing error pursuant to 15 U.S.C. § 1666 to dispute purported billing errors with respect to her credit card account.  The letter she sent in the present case is identical to the one that was involved in *Carmack I* and was, in fact, even sent on the same date.  The court already ruled in *Carmack I* that the identical letter did not constitute a valid notice of billing error pursuant to 15 U.S.C. § 1666.

The third count alleges "violations of plaintiff's right to due process with respect to an arbitration award obtained by defendant Chase in the National Arbitration Forum."  The court dealt with and dismissed those identical claims in *Carmack I*.  Among other things, the court found that the National Arbitration Forum award provides all of the procedural safeguards needed to be recognized as a viable alternative to the judicial system, citing *Cole v. Burns International Security Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997).

The court also held in *Carmack I* that the plaintiff had failed to state a claim under the Federal Arbitration Act for vacating the arbitration award inasmuch as none of the grounds for vacating an award stated in the statute had been pleaded or proven.

Accordingly, the identical claims in the present action are barred by the doctrine of collateral estoppel.  The principles announced in *Carmack I* also bar the present action as to the claim that plaintiff did not agree to arbitration.  That claim is made in "Count 2," as a breach of contract claim.  The only difference between *Carmack I* and the present case with respect to Carmack's agreement to arbitrate is that the arbitration provision in her cardmember agreement was in the original cardmember agreement in *Carmack I*, while it was added by amendment in the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  present action.  The same principles of law briefed in *Carmack I*, however, establish that the

2  amendments to the credit card agreement adding an arbitration provision are valid and

3  enforceable.  Chase has contemporaneous records that plaintiff was sent amendments on three

4  separate occasions that pertained to mandatory arbitration.  For all these amendments, she could

5  have opted out by ceasing to use the card, but she continued to use it.

6  **II.     UNDISPUTED FACTS**

7        1.     Chase is a national banking association chartered under the laws of the United

8  States of America with its main office at 200 White Clay Center Drive, Newark, Delaware.

9  Chase enters into credit card contracts with consumers, issues credit cards to consumers, extends

10  credit to those consumers pursuant to the contract, and is entitled to payments pursuant to the

11  contract.

12        2.     Chase Bank USA, N.A. was formerly known as Chase Manhattan Bank USA,

13  N.A.  The name change took place on March 1, 2005.

14        3.     Chase issued a credit card account to Plaintiff Martha Carmack  on or about

15  May 19, 1993, which bore the 16-digit account number XXXX-XXXX-XXXX-6176.

16        4.     Along with the credit card sent to the cardholder at the inception of the Account,

17  Plaintiff received a written "Cardmember Agreement" ("Cardmember Agreement") establishing

18  the terms of the Account.  It has been the invariable practice of Chase, to enclose the

19  Cardmember Agreement in the same envelope in which the credit card itself is mailed to the card

20  member.  Chase can determine which edition of the Cardmember Agreement was sent by the date

21  of issuance of the account.  A true and accurate copy of the Cardmember Agreement that contains

22  the terms initially governing the Account is attached as Exhibit A to the accompanying

23  Declaration of Milissa Rutledge ("Rutledge declaration").  The first carryover paragraph on

24  pages 10-11 of the Cardmember Agreement provides as follows:

25        **Law That Applies.** The laws of the United States of America and
          the State of Delaware apply to this Agreement and to your use of
26        your Card, your Checks and your Account.

27        5.     The Cardmember Agreement (pp. 8-9) also contains provisions permitting Chase

28  to amend the credit agreement.  The credit agreement provided, in pertinent part:

**Amendments To This Agreement.** We can amend any of the terms of this agreement at any time, and we can set the effective date for any such amendment. We will notify you by mail of any such amendment as required by law. The amended terms of this Agreement can apply to all outstanding unpaid indebtedness and any future transactions on your Account. Any change which would increase the rate of Finance Charge, other fees, or impose a fee not set forth in this Agreement will be effective only if you agree to it. We can obtain your consent to any such amendment in one of two ways, as selected by us and disclosed to you with a notice of change of terms. Under one method, you consent to the amendment if: 1) after we give you notice of the change, you elect to use your Account after the effective date of the amendment; or 2) you agree in writing to the change. Under the other method, you consent to the amendment if:  1) within 30 days after we mail you notice of the change, you do not give us written notice rejecting the change at the address we provide; or 2) you use your Account after 30 days from the date we mail you notice of the change, regardless of whether you give us notice rejecting the change.

6.    Attached as Exhibit B to the Rutledge declaration are true and correct copies of the billing statements sent to Carmack during the period June 2003 through April 2006. These statements indicate that Carmack was actively using her account for new charges at least through September of 2005. She thus ratified all amendments described below by using her account after the amendments were received.

7.    The Cardmember Agreement was amended on several occasions with respect to binding arbitration. Attached as Exhibit C to the Rutledge declaration is a true and correct copy of a record of the amendments sent to Carmack with respect to the Account. Exhibit C notes that on "03/02" Carmack was sent Form 25808. A true and correct copy of Form 25808 is attached as Exhibit D to the Rutledge declaration. That amendment contained the following provision:

**ARBITRATION AGREEMENT.**

A new section is added to your Agreement that will read as follows:

**ARBITRATION AGREEMENT**

**IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT.  YOU ARE GIVING UP RIGHTS YOU**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED . . . .**

**1. Binding Arbitration.**

This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**2. Claims Covered.**

Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief . . . .

**3. Initiation of Arbitration.**

The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to the rules of one of the other two arbitration administrators.

. . .

**YOUR RIGHTS TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE.**

The changes described in this Notice will not become effective if you send us a written letter that you choose not to accept them. You may choose not to accept the **Arbitration Agreement** section, the **Other Changes to your Agreement** section, or both.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

If the only choice you make is not to accept the **Arbitration Agreement** section, your Account will remain open. . . . In any event, we must receive your letter no later than April 25, 2002. In your letter, please include your name, address, account number and a statement that you do not want the **Arbitration Agreement** section, the **Other Changes to your Agreement** section, or both sections, to apply to your Account. If you do not specify which sections you choose not to accept, we will assume that you chose not to accept both sections and your Account will be closed. Your letter must be mailed to Chase Manhattan Bank USA, N.A., P.O. Box 15125, Wilmington, DE, 19850-5125. We must receive your written letter by the time indicated and at the address indicated or your choice(s) will not be effective; it is not sufficient to telephone us. . . .

Under the last paragraph quoted above, Carmack could have opted out of the amendment simply by sending a letter to that effect. She failed to do so.

8.     The Cardmember Agreement was again amended in October 2004, as reflected on Exhibit C. The amendment is identified on Exhibit C as "DMSTC 45." "DMSTC 45" consisted of Form ADV2039 and two other forms not relevant here. As indicated on page 2 of Exhibit B, DMSTC #45 was sent to Carmack with her October 2004 statement. A copy of the actual statement sent to Carmack on 10/13/2004 is attached as page 19 of Exhibit B. That statement called for a minimum payment due of $129.00. It is certain that Carmack received the statement dated 10/13/2004 because the statement for the next month dated 11/11/2004 shows that she made the minimum payment invoiced in the amount of $129.00. A true and correct copy of Form ADV2039 is attached as Exhibit E to the Rutledge declaration. Pertinent portions of the arbitration clause in this amendment read as follows:

### 8. ARBITRATION AGREEMENT

PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND

WE MAY OTHERWISE HAVE HAD A RIGHT OR
OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A
JUDGE OR JURY, AND/OR TO PARTICIPATE IN OR BE
REPRESENTED IN A CASE FILED IN COURT BY OTHERS
(INCLUDING CLASS ACTIONS AND OTHER
REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU
WOULD HAVE IF YOU WENT TO A COURT, SUCH AS
DISCOVERY OR THE RIGHT TO APPEAL THE DECISION
MAY BE MORE LIMITED. EXCEPT AS OTHERWISE
PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made
pursuant to a transaction involving interstate commerce, and shall
be governed by and be enforceable under the Federal Arbitration
Act (the "FAA"), 9 U.S.C. § 1-16 as it may be amended. This
Arbitration Agreement sets forth the circumstances and procedures
under which claims (as defined below) may be resolved by
arbitration instead of being litigated in court.

. . .

**Claims Covered.** Either you or we may, without the other's
consent, elect mandatory, binding arbitration of any claim, dispute
or controversy by either you or us against the other, or against the
employees, parents, subsidiaries, affiliates, beneficiaries, agents or
assigns of the other, arising from or relating in any way to the
Cardmember Agreement, any prior Cardmember Agreement, your
credit card Account or the advertising, application or approval of
your Account ("Claim"). This Arbitration Agreement governs all
Claims, whether such Claims are based on law, statute, contract,
regulation, ordinance, tort, common law, constitutional provision,
or any legal theory of law such as respondent superior, or any other
legal or equitable ground and whether such Claims seek as
remedies money damages, penalties, injunctions, or declaratory or
equitable relief.

. . .

**Initiation of Arbitration.** The party filing a Claim in arbitration
must choose one of the following three arbitration administrators:
American Arbitration Association; JAMS/Endispute ("JAMS"); or
National Arbitration Forum. These administrators are independent
from us. The administrator does not conduct the arbitration.
Arbitration is conducted under the rules of the selected arbitration
administrator by an impartial third party chosen in accordance with
the rules of the selected arbitration administrator and as may be
provided in this Arbitration Agreement.

9.      The most recent amendment affecting the arbitration provision occurred in

February 2005, prior to the events giving rise to this lawsuit, and included a new arbitration

provision. Chase, by direct mail with her monthly statement dated 02/11/2005, sent Carmack the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   amendment identified as "ADV2264," as reflected on page 2 of Exhibit C. A copy of the

2   monthly statement dated 02/11/2005 is attached to Exhibit B as page 23. That statement billed a

3   minimum payment of $196.00. It is certain that Carmack received this statement because the

4   statement for the next month dated 03/15/2005 (p. 24 of Exh. B) indicates that she made the

5   minimum monthly payment billed the previous month of $196.00. A true and correct copy of this

6   amendment is attached as Exhibit F to the Rutledge declaration. Amendment ADV2264

7   contained the following language:

8   > The following amends the **Initiation of Arbitration** section of the
9   > **ARBITRATION AGREEMENT** that is part of your Agreement,
    > to remove references to JAMS/Endispute. JAMS will no longer be
10  > available as a choice for an arbitration administrator for any Claim
    > filed by either you or us under the Arbitration Agreement after the
11  > effective date of this amendment.

12  > **Initiation of Arbitration**. The party filing a Claim in
    > arbitration must choose one of the following two arbitration
13  > administrators: American Arbitration Association or
    > National Arbitration Forum. These administrators are
14  > independent from us. The administrator does not conduct
    > the arbitration. Arbitration is conducted under the rules of
15  > the selected arbitration administrator by an impartial third
    > party chosen in accordance with the rules of the selected
16  > arbitration administrator or as may be provided in this
    > Arbitration Agreement. Any arbitration hearing that you
17  > attend shall be held at a place chosen by the arbitrator or
    > arbitration administrator within the federal judicial district
18  > in which you reside at the time the Claim is filed, or at some
    > other place to which you and we agree in writing. You may
19  > obtain copies of the current rules of each of the arbitration
    > administrators, information about arbitration and arbitration
20  > fees, and instructions for initiating arbitration by contacting
    > the arbitration administrators as follows: American
21  > Arbitration Association, 335 Madison Avenue, Floor 10,
    > New York, NY 10017-4605, web site at www.adr.org,
22  > phone 800-778-7879; or National Arbitration Forum,
    > P.O. Box 50191 Minneapolis, MN 55405, web site at
23  > www.arbitration-forum.com, phone 800-474-2371.

24      10.    On or about September 26, 2005, Plaintiff Carmack sent Chase a purported Notice

25  of Billing Error, a copy of which is attached as Exhibit G to the Rutledge declaration.

26      11.    Around September 2005, Plaintiff became delinquent on the Account. The

27  foregoing arbitration provision, quoted in Paragraphs 8 and 9 above, was in effect at this time and

28  all times thereafter. Pursuant to the terms of the Cardmember Agreement, Chase filed a claim

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Case No. C07 03464 WHA                    - 7 -        MEMORANDUM OF POINTS AND
RC1/5018117.1/WK1                                      AUTHORITIES

1  with the National Arbitration Forum around June 2006. A true and correct copy of this claim is

2  attached as Exhibit H to the Rutledge declaration.

3      12.    Around October 20, 2006, Plaintiff filed a response to the Arbitration Claim. A

4  true and correct copy of the Response is attached as Exhibit I to the Rutledge declaration.

5      13.    Around November 1, 2006, the National Arbitration Forum issued an award in

6  favor of Chase. A true and correct copy of the Award is attached as Exhibit J to the Rutledge

7  declaration.

8  **III.    THE "NAES"**

9      This lawsuit is virtually identical to at least 50 other actions filed against Chase across the

10  country in 2007, including 7 in California. It involves an abusive "debt elimination" scheme

11  marketed over the internet by a company titled "North American Educational Services" or

12  "NAES." Its website indicates that the company operates and sells its debt elimination program

13  under the name "Debt Relief Educational Services ("DRES"). Declaration of Pamela Zanger, ¶ 3

14      As with most groups that promote and sell similar alleged debt elimination "scams,"

15  NAES/DRES uses a network of representatives and agents to sell its program, who have their

16  own websites. NAES/DRES and its representatives guarantee debt elimination (for example in

17  www.lifebeyonddebt.com: "You have just found the way to eliminate Major Credit Card Debt

18  and Unsecured Debt. With our Debt Elimination Program you can legally stop making

19  payments ... IMMEDIATELY!!!"). Customers are also told to stop paying their credit card

20  companies immediately (see www.drg.cc/contact.aspx). Declaration of Pamela Zanger, ¶ 3.

21      Apparently, for a fee, a consumer can purchase various forms for "disputing" their debt,

22  including a "dispute" letter (which, as explained below, is not a proper TILA dispute letter), a

23  response/objection to the arbitration claim, a complaint containing allegations for: 1) Violation of

24  15 U.S.C. § 1666; 2) Breach of Contract; and 3) Violation of Due Process (the same allegations in

25  the present action); a petition to vacate arbitration award, etc. Declaration of Pamela Zanger,

26  ¶¶ 3 –22 & Exhibits L-FF. As noted in the Zanger Declaration, in some of the other cases the

27  cardmember used an NAES form which still bore a fax stamp from NAES.

28      Carmack used each of these forms in both *Carmack I* and the present action. Use of these

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   forms shows the claim was not made in good faith. The forms presume that each person who

2   uses them has exactly the same factual basis for disputing his or her billing statement and exactly

3   the same basis for claiming that he or she did not agree to arbitrate.

4       Chase recently obtained a copy of some of the materials which the NAES makes available

5   to its customers, which are attached as Exhibit GG to the Lance Taylor Warren declaration.

6   Exhibit GG is essentially a guidebook on how to use the NAES forms to respond to arbitration

7   claims and to commence and prosecute litigation against credit card issuers on the "theories" that

8   the customer did not agree to arbitration and validly disputed his billing statement(s) – exactly the

9   theories used by Carmack. The following are some of the significant highlights from Exhibit GG.

10  a.  Pages LTW04823 and LTW04832 note, among other things, the importance that NAES

11      places on keeping its name hidden by ensuring that any of its form letters that are used by its

12      customers are printed without the header and footer from its website disclosing its role.

13  b.  On page LTW04841 of Exhibit GG, under the heading "Adding Cards" the NAES admits that

14      its true goal and role is to provide a "debt relief" scheme, rather than an "educational service."

15  c.  On page LTW04860 of Exhibit GG, despite the challenge that the NAES is encouraging its

16      customers to make to delivery of arbitration provisions by mail, it concedes the mailing

17      presumption rule, in other words, that a letter duly mailed is deemed received.

18  d.  On page LTW04962 of Exhibit GG, the NAES encourages its customers to move, hide, or

19      retitle assets so as to be judgment-proof.

20  e.  On page LTW04889–91 of Exhibit GG, there is a separate section dealing with

21      BankOne/Chase. This section, in fact, acknowledges that BankOne/Chase did have

22      arbitration clauses and does employ them. The NAES customer, however, is instructed to

23      send objection ("Motion to Dismiss") to the arbitration to the National Arbitration Forum

24      without even being told the basis, namely, the supposed absence or failure to deliver the

25      arbitration clause.

26  f.  Pages LTW04934–35 of Exhibit GG makes it clear that the NAES is providing draft or form

27      pleadings to NAES customers once litigation ensues and is reviewing their filled-in drafts

28

1   prior to filing. In the last note on page LTW04936, NAES makes it clear that all the

2   customers are doing is filling in the blanks.

3   g. Page LTW04952 makes it clear that if the preset form documents do not cover what a

4   customer needs, they can e-mail and request something custom-made from NAES.

## IV.    PROCEDURAL HISTORY

6       On April 9, 2007, Plaintiff filed an action in the Superior Court of the State of California,

7   for the County of San Francisco against Chase ("the Action"). In the Action, Plaintiff alleged that

8   she entered into a contract with defendant Chase Bank USA, N.A., that was governed by the

9   Truth in Lending Act, 15 U.S.C. § 1601 et seq.

10      Count I of the Complaint alleges that Chase violated 15 U.S.C. §§ 1666(a) and 1666(b),

11  by ignoring plaintiff's purported notice of billing error. Count I also alleges that the arbitration

12  provision violated California state law and that Carmack never agreed to it. In relation to the

13  same alleged facts, the Complaint further alleges, in Count II, breach of contract and, in Count III,

14  that the arbitration provision constitutes a violation of plaintiff's purported right to due process.

15  On the basis of these allegations, the Complaint prays for relief from the arbitration award.

16      On July 2, 2007, Chase removed the action to this court on the grounds that the United

17  States District Court has jurisdiction of Count I based on Federal Question Jurisdiction and

18  Supplemental Jurisdiction for Counts II and III.

19      This complaint is virtually identical to the 50 or more other complaints filed against Chase

20  by patrons of NAES. See Declaration of Pamela Zanger, Exhibits N, Q, T , X, AA & DD.

21      On July 9, 2007, Chase filed an answer and counterclaim to confirm the arbitration award

22  entered on November 1, 2006.

23      By this motion, Chase seeks to confirm the arbitration award of November 1, 2006.

## V.    THE EVIDENTIARY STANDARD TO BE APPLIED TO THIS MOTION

25      In *Carmack I*, Chase moved to confirm the arbitration award and thereafter to dismiss the

26  remaining portions of the action on the basis of *res judicata* effect of the arbitration award. The

27  court instead construed Chase's motion as a motion for summary judgment and found that there

28  was no triable issue of fact raised by the complaint on the merits. It should be noted, however,

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

- 10 -

MEMORANDUM OF POINTS AND
AUTHORITIES

1   that a motion to confirm an arbitration award under 9 U.S.C. § 9 has never been held to be subject

2   to the same standard as a motion for summary judgment ("no triable issue of fact").  Section 9

3   does not state the applicable evidentiary standard, but, in general, the requisite degree of proof in

4   civil cases, unless otherwise specified, is a preponderance of the evidence.  *In re Exxon Valdez*,

5   270 F.3d 1215, 1232 (9th Cir. 2001).  Chase thus contends that the only standard which Chase

6   must meet under a motion to confirm arbitration award under section 9 is preponderance of the

7   evidence.

8        To hold Chase to the "no triable issue of fact" standard on the merits of the dispute would

9   moreover, require it to relitigate the issues already decided in the arbitration, where it prevailed

10  by a preponderance of the evidence.

11       Chase will, nonetheless, establish below that it is entitled to summary judgment on the

12  merits.

**VI.    COLLATERAL ESTOPPEL OF THE JUDGMENT IN CARMACK I**

14       Collateral estoppel or issue preclusion bars the relitigation of issues actually adjudicated

15  in previous litigation between the same parties. 18 C. WRIGHT, A. MILLER & E. COOPER,

16  FEDERAL PRACTICE AND PROCEDURE, § 4402 (1981).  For issue preclusion to apply, the issue

17  must have been actually or necessarily decided in the previous action and judgment in the

18  previous action must be final. WRIGHT, §§ 4419, 4420.  As held in *Clark v. Bear Stearns & Co.*,

19  996 F.2d 1318, 1320 (9th Cir. 1992).

20            To foreclose relitigation of an issue under collateral estoppel:
21            (1) the issue at stake must be identical to the one alleged in the prior
              litigation; (2) the issue must have been actually litigated in the prior
              litigation; and (3) the determination of the issue in the prior
22            litigation must have been a critical and necessary part of the
              judgment in the earlier action.
23

24       The party asserting issue preclusion bears the burden of showing with clarity and certainty

25  what was determined by the prior judgment. *Id.* at 1320.  The judgment in *Carmack I* is now

26  final and it bars completely the claims made in Counts I and III of the present complaint.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    **VII.    IT WAS ACTUALLY DETERMINED IN _CARMACK I_ THAT PLAINTIFF'S**
     **PURPORTED NOTICE OF BILLING ERROR DOES NOT CONSTITUTE A**
2    **VALID NOTICE OF BILLING ERROR UNDER 15 U.S.C. § 1666**

3         Count I alleged violation of 15 U.S.C. § 1666. The notice of billing error sent in the

4    present case is identical to the one sent in _Carmack I_. The letters were, in fact, sent on the same

5    date.

6         The court dealt with the alleged billing error in order, pages 6 through 8. After quoting

7    the provisions of 15 U.S.C.§ 1666 providing for the notice of billing error procedure and defining

8    "a billing error" the court stated as follows:

9              Her notice [of billing error] did not claim that plaintiff ever actually
               tried to pay Chase via promissory notes or other instruments.
10             Plaintiff has utterly failed to identify any purported note sent to
               Chase. More fundamentally, however, the notion that any debtor
11             can unilaterally pay off debts with an 'IOU' is preposterous. Since
               the notice failed to raise any plausible billing error, the notice was
12             invalid from the start and Chase had no duty to respond to it.
               Therefore the arbitration was not barred by Chase's failure to
13             respond to the notice.

14   Order at 7-8. Exactly the same allegations are made and the same issue presented in the present

15   case, and plaintiff should accordingly be collaterally estopped from contending that Chase

16   violated § 1666.

17   **VIII.    THE CLAIM OF DEPRIVATION OF DUE PROCESS WAS ACTUALLY**
     **DECIDED ADVERSELY TO PLAINTIFF IN _CARMACK I_**
18

19        The court dealt with Carmack's claim of lack of due process in its Order, pages 11

20   through 12. Citing _Cole v. Burns International Security Services_, 105 F.3d at 1482 (cited

21   approvingly by _Circuit City Stores, Inc. v. Adams_, 279 F.3d 889, 895 (9th Cir. 2002), this Court

22   held that the National Arbitration Forum's Code of Procedure provided the procedural safeguards

23   needed for the NAF to be recognized by other courts as a viable alternative to the judicial system,

24   including provisions for neutral arbitrators, substantial discovery, requirement for a written

25   award, provision for all types of relief otherwise available in court, and not unreasonable costs

26   and fees. Exactly the same contention is made in the present action in Count II, and plaintiff

27   should accordingly be held to be collaterally estopped as to this issue.

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

## IX.    CARMACK INDISPUTABLY AGREED TO BINDING ARBITRATION

As in her previous complaint, Carmack alleges in the present complaint that she never agreed to arbitration. That is not one of the grounds under 9 U.S.C. §§ 9, 10, and 11 for vacating an arbitration award. As the Court notes in its order in *Carmack I*, Exhibit W to Rutledge declaration, pp. 12-13, no corruption, fraud, undue means, arbitrator misconduct or any of the other grounds for vacating an arbitration award are even alleged, and that should end the matter.

But even if an allegation that a party did not agree to arbitration is sufficient to defeat a motion to confirm award, Plaintiff's contentions are absolutely meritless. As indicated above, the original Cardmember Agreement provided that the Agreement could be amended by mailing amendments to plaintiff, which amendments would apply prospectively if plaintiff thereafter used the account. That method of amending an agreement governing a credit card account is specifically approved in Delaware law, which governs by virtue of the choice of law provision in the original Cardmember Agreement.

### A.    An Agreement To Arbitrate Is Specifically Enforceable Under The Federal Arbitration Act

Contrary to Carmack's complaint, the Arbitration Provision is governed by federal and Delaware law, not California law.

Because Chase (as well as each of its predecessors-in-interest) is located in Delaware and Plaintiffs are located in California, the Cardmember Agreement between them was made in interstate commerce. The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., provides that "[a] written provision . . . in a contract evidencing a transaction involving commerce to settle by arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.*, § 2. *Southland v. Keating*, 465 U.S. 1, 10 (1984) held not only that the FAA governed arbitration agreements made in interstate commerce but also that it prohibited a state from "requir[ing] a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."

Federal law should thus be applied by virtue of the preemptive effect of the FAA. Federal

1  law also governs enforcement and interpretation of the subject credit card agreement by virtue of

2  the choice of law provisions in them, which specify federal law and Delaware law.

3      Federal law strongly favors enforcement of agreements requiring arbitration.  Congress

4  enacted the FAA for the purpose of "'revers[ing] the longstanding judicial hostility to arbitration

5  agreements . . . and to place arbitration agreements upon the same footing as other contracts.'"

6  *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 521, 148 L. Ed.

7  2d 373 (2000).  Likewise, Delaware law strongly favors enforcement of agreements requiring

8  arbitration.  The Delaware Supreme Court has declared, unequivocally, that "the public policy of

9  this state favors the resolution of disputes through arbitration."  *Graham v. State Farm Mutual*

10  *Auto Insurance Co.*, 565 A.2d 908, 911 (Del. 1989); see also, *SBC Interactive, Inc. v. Corporate*

11  *Media Partners*, 714 A.2d 758, 761 (Del. 1998).[1/]

12        **B.**    **Plaintiff Agreed To Arbitrate The Claims Alleged In The Complaint**

13      By its terms, the FAA leaves no place for the exercise of judicial discretion when the

14  parties have agreed to arbitrate.  Accordingly, the Court's role is limited to determining

15  (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

16  encompasses the dispute at issue.  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d

17  1126, 1130 (9th Cir. 2000).  The answer to each question is "yes":  First, the Arbitration Section

18  was contained in the amendments to Plaintiff's Credit Card Agreement with Chase, and Plaintiff

19  agreed to be bound by amendments to the agreements.  Second, the Arbitration Section fully

20  embraces all the claims alleged in the arbitration claim.

21      In determining the validity of an agreement to arbitrate, federal courts must apply ordinary

22  *state* law principles that govern the formation of contracts.  *Circuit City Stores v. Adams*, 279

23  F.3d 889, 892 (9th Cir. 2002).  Whether California law or Delaware law is applied to determine if

24  a contract has been formed between Chase and Plaintiff, the result is the same:  a valid,

25

26  [1/] The Federal Arbitration Act controls here and requires arbitration.  We mention Delaware law, which is the State
law that generally governs the account, only to show that there is no inconsistency.  California law is also consistent
in requiring the enforcement of arbitration agreements (see California Code of Civil Procedure Section 1280 et seq.)

27  but it is in any event not applicable here.  The parties have chosen Delaware law (see Rutledge Declaration,
Exhibit "A") and that choice is binding.  *Washington Mutual Bank, F.A. v. Superior Court (Briseno)*, 24 Cal. 4th 906,

28  915-18 (2001).

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   enforceable contract has been formed (the Cardmember Agreement), and the Arbitration Section

2   is enforceable as an amendment to the Cardmember Agreement.

3       **1.    Enforceability Under Delaware Law**

4       The Credit Card Agreement states that it is governed by Delaware law.  Under California

5   law, such choice of law provision is enforceable, even if it appears in a contract of adhesion.

6   *Washington Mutual Bank, F.A. v. Superior Court (Briseno)*, 24 Cal. 4th 906, 915-18 (2001).  In

7   *Discover Bank v. Superior Court*, 134 Cal. App. 4th 886 (Dec. 7, 2005), the court considered a

8   dispute between a Delaware bank and a credit card holder in California.  The court enforced a

9   choice-of-law provision specifying that the applicable law was that of Delaware and the United

10  States.  The trial court was instructed to reinstate its original order that the dispute be arbitrated,

11  despite the fact that the arbitration agreement contained a class action waiver, which the court

12  held to be unconscionable under California law, but not under Delaware law.  The fact that the

13  bank was located in Delaware provided a reasonable basis for enforcement of the choice of law

14  clause.  As *Discover* compels, the choice of law provisions in the Credit Card Agreements must

15  be enforced.

16      As indicated above, the Cardmember Agreement was sent to Carmack in the same

17  envelope as the credit card itself, and she thereafter used the card.  The original Cardmember

18  Agreement provided that it could be amended by mailing amendments to Carmack, which would

19  become effective if she subsequently used the card.  Title 5 of the Delaware Code, § 952,

20  specifically provides for the amendment of Credit Card Agreements by this method, and

21  specifically allows such amendments to include an arbitration provision:

22      § 952.  Amendment of agreement

23      (a) Unless the agreement governing a revolving credit plan
    otherwise provides, **a bank may at any time and from time to**

24      **time amend such agreement in any respect, whether or not the**
    **amendment or the subject of the amendment was originally**

25      **contemplated or addressed by the parties or is integral to the**
    **relationship between the parties.**  Without limiting the foregoing,

26      such amendment may change terms by the addition of new terms or
    by the deletion or modification of existing terms, whether relating

27      to . . . **arbitration** or other alternative dispute resolution
    mechanisms, or other matters of any kind whatsoever . . . .  **Any**

28      **amendment that does not increase the rate or rates of periodic**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

**interest charged . . . may become effective as determined by the
bank . . . . Any notice of an amendment sent by the bank may
be included in the same envelope with a periodic statement or
as part of the periodic statement or in other materials sent to
the borrower.**

[Emphasis added.]

The amendment of the present Cardmember Agreement two times, first in March 2002 to add an arbitration provision and second in October 2004, to add the present (more comprehensive) Arbitration Section, conformed to Delaware law and is enforceable thereunder. In fact, the amendment of a credit card agreement exactly as done by Chase adding the identical arbitration provision was held valid in *Edelist v. MBNA America Bank*, 790 A.2d 1249, 1253-54 (Del. Super. Ct. 2001).

### 2.    Enforceability Under California Law

Even if California law governs the enforceability of the arbitration provision (which Chase denies), the arbitration provisions are also enforceable under California law. The proposed amendments were sent to Plaintiff. Again, the Cardmember Agreement itself provided that by subsequently using the credit card, Plaintiff agreed to the terms and provisions in the proposed amendments. For the March 2002 amendment, she was specifically given the opportunity to opt out of the amendment by so notifying Chase. She did not do so.[2]

California Civil Code § 1698 provides,

> A written contract may expressly provide for modification. When a modification is accordance with a provision authorizing and setting forth a method for its revision, the rule that a contract in writing may be altered only by another written contract or an executed oral

---

[2] In *Badie v. Bank of America*, 67 Cal. App. 4th 779 (1998), the court found unenforceable an amendment adding an ADR clause to a credit card account agreement that was sent to customers as an insert with their monthly account statement, notifying them of a new term. That case, of course, applies California law, which is not the law to be applied here. But even *Badie* is distinguishable. *Badie* was based on the court's interpretation of the change in terms provision. The right to "change" the terms of the contract was construed not to allow the addition of a completely new term, such as an ADR clause, not within the original contemplation of the parties. The "amendments to this agreement" clause quoted at the top of page 3 above allows the agreement to be "amended." The term "amend" is broad enough to include the addition of new terms: for example, amendments to the U.S. Constitution have added entirely new terms not contemplated in the original document. *Badie* is, moreover, distinguishable because the change in terms provision there did not give the customer the opportunity to opt out, as did the March 2002 amendment. Furthermore, the notice of amendment prominently presented the arbitration provision in ALL CAPS Because of the Civil Code § 1698, quoted above, it cannot be said that the right to unilaterally add a term to the contract in and of itself offends California's public policy.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    agreement has no application because there is no alteration. The
     modification is in accordance with the terms of the contract.
2

3    Here the amendment procedure was in accordance with the terms of the original Cardmember

4    Agreement. *See Busch v. Globe Indus.*, 200 Cal. App. 2d 315, 320 (1962).

5         Under California law, where a writing appears on its face to be an offer or proposed

6    contract and is delivered by one party to the other, the receipt by the other of the contract and the

7    acceptance of the benefits and rights stated therein will constitute a manifestation of acceptance.

8    *Marin Storage & Trucking v. Benco Contracting Eng'g*, 89 Cal. App. 4th 1042, 1049 (2002); *see,*

9    *generally*, I WITKIN, SUMMARY OF CALIFORNIA LAW (9th ed.) Contracts, § 121.

10   Likewise, where a contract is offered in writing to the offeree, with freedom to reject the terms

11   proposed, use of the services or other consideration tendered with the offer amounts to an

12   acceptance. *Durgin v. Kaplan*, 68 Cal.2d 81, 89 (1968). "The existence of mutual assent is

13   determined by objective criteria, not the parties' subjective intent. The test is whether a

14   reasonable person would from the conduct of the parties conclude that there was a mutual

15   agreement." *Marin Storage & Trucking, Inc.*, *supra*, at 1050. "A voluntary acceptance of the

16   benefit of a transaction is a consent to all the obligations arising from it, so far as the facts are

17   known, or ought to be known to the person accepting." Cal. Civ. Code, § 1589.

18        Plaintiff accepted the benefits of the Credit Card Agreement, as amended, voluntarily by

19   continuing to use the account and is thus bound by the obligations arising from the amendments,

20   including the Arbitration Section. She could have ceased using the Credit Card Account if she

21   did not choose to be bound by the amendments. As indicated in Exhibit B to the Rutledge

22   Declaration, Carmack continued to charge purchases and balance transfers to the credit card

23   account throughout the period June 2003 through September 2005. Having enjoyed the benefits

24   of the account, she cannot now cherry-pick the Cardmember Agreement and contend that she is

25   not bound by certain of its provisions.

26        California, moreover, has its own strong policy in favor of enforcing arbitration

27   agreements. *Madden v. Kaiser Found. Hospitals*, 17 Cal. 3d 699, 706-707 (1976). There would

28   thus be no public policy of California offended by enforcement of the arbitration provisions.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

C.    **Plaintiff Is Bound By The Decision Of The Arbitrator That An Agreement To Arbitrate Disputes Existed**

If it is Carmack's contention that the provisions in the original Cardmember Agreement relating to amendment of the Agreement are not valid, that contention is one that she could have made to arbitrator. The arbitrator specifically found that there was a valid and enforceable agreement to arbitrate, and Carmack should be bound by that determination. As this Court itself held in its Order in *Carmack I*:

> [U]nless the challenge is to the arbitration clause itself, the issue of [a] contract's validity is considered by the arbitrator in the first instance. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). [T]he role of the federal courts in these circumstances is limited: the sole question is whether the arbitration clause at issue is valid and enforceable under § 2 of the Federal Arbitration Act . . . . In making this determination, federal courts may not address the validity or enforceability of the contract as a whole. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 937 (9th Cir. 2001). The NAF arbitrator already found that 'On or before 06/06/2006 the Parties entered into a valid, written agreement to arbitrate their dispute' (Rutledge Decl. Exh. G). Where, as here, plaintiff challenges the existence of a contract containing an arbitration clause, the question is left to the arbitrator. The arbitrator found that there was a valid and enforceable arbitration clause between plaintiff and defendant. This order will therefore treat the document provided by Chase, which contains an arbitration clause, as the original cardmember agreement between plaintiff and Chase.

X.    **THE ARBITRATION AWARD SHOULD BE CONFIRMED**

In its Order in *Carmack I* at 12-13, this Court noted that there are only four grounds for vacating an award: fraud, arbitrator corruption, arbitrator misconduct or exceeding of powers and "corrections for material miscalculations, exceeding of powers, or imperfection of form." The Court further observed that an award must be confirmed unless one of these grounds exists. The Court then held that plaintiff failed to state a claim under the FAA for vacating the award:

> Plaintiff fails to plead fraudulent procurement of the arbitration agreement, arbitrator misconduct, or material miscalculation of the arbitration award. Plaintiff seems to plead that the NAF is biased in favor of Chase Manhattan Bank: 'One cannot help but to question the impartiality of a forum that stands to [?] giant considerable future business and income from Defendant . . . and the likelihood of no future business from Plaintiff' (Opp. at 6). The Ninth Circuit requires a high standard for allegations of actual bias by an arbitrator under the FAA: 'The appearance of impropriety,

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1
2
3
4

standing alone, is insufficient to establish evident partiality in actual bias cases, because a reasonable impression of partiality does not necessarily mean that the arbitration award was the product of impropriety.' *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) (internal citations and quotations omitted). To establish an arbitrator's 'actual bias,' therefore, 'the party alleging evident partiality . . . must establish specific facts which indicate improper motives.' *Ibid.* In *Woods*, the Ninth Circuit upheld the impartiality of an arbitration panel composed of a randomly selected group of two Saturn dealers and two Saturn employees. *Id.* at 426, 429 ('His assertion that [the arbitrators'] jobs would be jeopardized if they decided against Saturn is unsupported; for example, he does not show that the employees who may serve as arbitrators are not subject to an employment contract that specifies their salary and tenure.')

Plaintiff has failed to plead any facts indicating improper motives by the NAF arbitrator. As stated, the NAF provides the procedural protection of a neutral arbitrator; plaintiff had the opportunity to challenge the neutrality of her arbitrator during the course of arbitration, yet she chose not to do so. Moreover, in *Woods*, the Ninth Circuit upheld as impartial an arbitration panel with a much more obvious source of bias than the NAF arbitrator here – the arbitrators there were employees and business associates of one of the parties. Here, the only business relationship pleaded by plaintiff is defendant's regular use of the NAF as an arbitrator in credit card disputes. Without pleading facts that specifically indicate improper motives by the NAF arbitrator, plaintiff fails to state a claim for vacating or correcting the NAF arbitration award.

Because plaintiff is using the identical pleading and making the identical contentions in the present action, her contentions are barred by the doctrine of collateral estoppel. Accordingly the Court should confirm the arbitration award which is the subject of the present action.

## XI. THE ARBITRATION AWARD BARS THE CLAIMS MADE HEREIN UNDER THE DOCTRINE OF RES JUDICATA

While Chase has established that there is no triable issue of fact on the merits, there is an alternate ground on which Chase is entitled to a judgment dismissing the complaint. Plaintiff's complaint seeks the adjudication of matters that were determined and resolved by the arbitration award, such as the validity of her balance. She alleges in her complaint that her balance was not valid, and that she sent a notice of billing error concerning it. The validity of the balance due on her account was determined in the arbitration. Once the arbitration award is confirmed (using a preponderance of the evidence standard) and becomes a judgment of this court, the doctrines of res judicata/collateral estoppel will bar any claims about the validity of the balance. The

1  arbitration award was a judgment on the merits, and the arbitration procedure gave Carmack a full

2  and fair opportunity to litigate whatever errors she believed were in her billing statements. If a

3  judgment is on the merits, it is binding and conclusive as to all issues which were actually

4  litigated, even though some factual matters or legal arguments which could have been presented

5  were not. *Bleeck v. State Board of Optometry*, 18 Cal. App. 3d 415, n. 429 (1971). "For purposes

6  of issue preclusion, ... an 'issue' includes any legal theory or factual matter which could have

7  been asserted in support of or in opposition to the issue which was litigated." *Border Bus. Park,*

8  *Inc. v. City of San Diego*, 142 Cal. App. 4th 1538, 1565-66 (2006).

9       Unless vacated or corrected by a court, a private arbitration award is normally entitled to

10  res judicata effect, thus barring re-litigation of identical claims. *Vandenberg v. Superior Court*

11  *(Centennial Ins. Co.)*, 21 Cal. App. 4th 815, 824 (1999). Indeed, an arbitration award bars

12  re-litigation of the matters heard or that could have been heard in the arbitration proceeding.

13  *Thibodeau v. Crum*, 4 Cal. App. 4th 749, 755 (1992). The contention in the present complaint that

14  there were errors in the bills accordingly must be dismissed because it is barred by the doctrine of

15  res judicata/collateral estoppel.

16       The remaining claims in the complaint to the effect that plaintiff did not agree to

17  arbitration and that arbitration deprived her of due process will necessarily be determined if the

18  court grants the present motion. Thus, plaintiff's entire complaint should be dismissed with

19  prejudice.

20  **XII.    CONCLUSION**

21       For the reasons stated above, the Court should grant summary judgment dismissing the

22  entire complaint filed by Carmack and confirm the arbitration award. In the alternative, it should

23  first confirm the arbitration award and then rule that the remaining claims are barred by the

24  doctrine of res judicata.

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    Dated: October 29, 2007            ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                     By:_____

4                                      GEORGE G. WEICKHARDT

                                          PAMELA J. ZANGER

5                                      Attorneys for Defendant

                                     CHASE BANK USA, N.A., as successor-

6                                      in-interest to BANK ONE DELAWARE,

                                     N.A.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco