```
IFED KEY 5222763110716176
                    INQUIRE ACCOUNT EVENT DETAIL
                              LAST MNT 03/26/2007    PREV MNT 03/14/2007
MARTHA CARMACK
DATE 032607 TO 010186 TRACK       EVENT 700 ___  TRAN ID ____  OPERATOR _____
  DATE   TIME    TYPE OPER   TRACKG TRAN
 000000 00:00      999 LEGAAD          MAMM
MEMORY MESSAGE                 DATE MAINTAINED 03/26/2007
!!!***LAWSUIT RECEIVED DO NOT CONTACT CARDMEMBER PER ANDREW DANOS IN THE ELGIN
LAW DEPARTMENT AT 847-488-6725
122805 08:05 A   700 MKT08G       SINF
REPCIT 01/06 **STANDARDIZATION**
REPCIT 01/06 DM ADV2632 FEE ONLY;3-TIER LF$15/$29/$39;RTRN PYMNT$39;OL$39
REPCIT RTRN CONVCHK$39;BT FEE3%/$5;CASH FEE3%/$10;.
REPCIT $1 MIN FIN CHRG;NO GRACE ON BT&CC'S
112905 08:13 A   700 MKTLMH       SINF
12/05 MIN DUE ROLLOUT; FLIPPED TO FFIEC CALCULATION
112205 09:05 P   700 MKTLMH       SINF
12/05 MINPAYDUE ROLLOUT=GREATEST OF 2% OR 1% OF STMT BAL+INT+OLF+LF
102105 01:14 P   700 MKTLMH       SINF
CAP INCR CORRECTION MEMO: INTERNAL CAP OF PRIME+23.99 INCREASED
FROM 29.49% to 29.99%. MIN DUE INCREASED TO 2.65% OF STATEMENT BALANCE
TO ENSURE MIN PAY DUE PAYS THE BILLED INTEREST EACH MONTH
B0122400000000 - BEGINNING OF SELECTED RECORDS
F1=HELP F3=EXIT F4=ACCT F5=SUMMARY F6=WORK F7=PBWD F8=PFWD F9=ADDR IND    F __
```

**EXHIBIT C**

IAED KEY 5222763110716176
                    INQUIRE ACCOUNT EVENT DETAIL
                                    LAST MNT 03/26/2007   PREV MNT 03/14/2007
MARTHA CARMACK
DATE 032607 TO 010186 TRACK          EVENT 700 ____  TRAN ID ____  OPERATOR _____
  DATE    TIME   TYPE OPER  TRACKG TRAN
~~092905 11:57 A   700 MKTLMH      SINF~~
CAP INCR: INTERNAL CAP OF PRIME+23.99 INCREASED FROM 29.49% to 29.99%
MIN DUE INCREASED TO 2.65% OF STATEMENT BALANCE TO ENSURE PART OF PAYMENT
IS APPLIED TO PRINCIPAL EACH MONTH
020405 11:59 A   700 MKTNM        CNV3
!02/05NOTIF 04/05 P+23.99 UPWD #7 RPX HRDNEG        T94 T58
101504 11:59 A   700 MKTNM        CNV3
!10/04NOTIF 12/04 FEE ONLY DMSTC #45
010904 11:59 A   700 MKTNM        CNV3
!01/04NOTIF 03/04 STNDRD RPX #0103 HRDNEG
030603 11:59 A   700 MKTNM        CNV3
!03/03NOTIF 05/03 STNDRD REPX #0319 HRDNEG
031502 11:59 A   700 MKTNM        CNV3
!03/02NOTIF 05/02STNDRD RPX FORM#25808 HRDNEG
030201 11:59 A   700 MKTNM        CNV3
!03/01NOTIF EFF 05/01 MAY 2001 RPX-FORM #25230


F1=HELP F3=EXIT F4=ACCT F5=SUMMARY F6=WORK F7=PBWD F8=PFWD F9=ADDR IND     F ___

```
IAED KEY 5222763110716176
                     INQUIRE ACCOUNT EVENT DETAIL
MARTHA CARMACK                        LAST MNT 03/26/2007  PREV MNT 03/14/2007
DATE 032607 TO 010186 TRACK           EVENT 700 ____  TRAN ID ____  OPERATOR ____
  DATE   TIME     TYPE OPER   TRACKG TRAN
022900 11:59 A    700 AS4NM          CNV3
!MAR 2000 REPX NOTIF/MAY EFFECTIVE FORM #24772
022199 11:59 A    700 AS4NM          CNV3
!MARCH NOTIF/MAY 99 REPX-FORM #24087
080398 11:59 A    700 MKTNM          CNV3
!AUGUST NOTIFICATION - OCTOBER REPRICING        2036WF




B0122300000000 - END OF SELECTED RECORDS
F1=HELP F3=EXIT F4=ACCT F5=SUMMARY F6=WORK F7=PBWD F8=PFWD F9=ADDR IND    F ___
```

March, 2002

## ARBITRATION AGREEMENT AND CHANGE IN TERMS NOTICE

We would like to explain certain changes in the terms of your Cardmember Agreement ("Agreement"), including the addition of an Arbitration Agreement. Some of the terms in this Notice may already be in effect on your Account. Any terms on your Account not changed here remain in effect. The changes described below will take effect for billing cycles ending May 1, 2002 and thereafter. The changes will apply for all existing and future balances on your Account.

There are 2 sections below that describe the changes. The first is the Arbitration Agreement section, and the second is the Other Changes to your Agreement section. After those 2 sections, under the heading Your Rights to Choose Not to Accept the Changes in this Notice, please read about your rights to choose not to accept these changes and how to exercise those rights.

ARBITRATION AGREEMENT.

A new section is added to your Agreement that will read as follows:

### ARBITRATION AGREEMENT

IT IS IMPORTANT THAT YOU READ THIS ARBITRATION AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000,

1

---

The fee will be $5 for each copy of any such record or document, and will remain $10 for an original sales slip. The fee will not be owed if your request reveals a billing error or unauthorized use on your Account as defined by the Federal Reserve Board's Regulation Z.

• Card Replacement Fee. A new section is added to your Agreement that will read as follows:

You may be charged a Card Replacement fee of $10 for any special services such as obtaining any Card on an expedited basis.

• Immediate Phone Payment Fee. A new section is added to your Agreement that will read as follows:

We may in our discretion permit you to make payments by authorizing us on your behalf to transfer funds from a deposit or other account to your Account. For each such payment, you will be charged an Immediate Phone Payment processing fee of $12.

• Minimum Payment. The "Minimum Payment" section of your Agreement will be modified by adding a sentence that states that in any given month that your current minimum payment calculated using a percentage of the New Balance is less than your total Finance Charges billed, the Minimum Payment will be equal to your total Finance Charges billed rounded up to the nearest dollar. The additional sentence will read as follows:

If the Minimum Payment as calculated herein is less than the Total Finance Charge as shown on your statement, your Minimum Payment for that statement instead will equal the Total Finance Charge (rounded up to the nearest dollar).

The other terms and conditions of your Agreement related to your Minimum Payment, such as our right to add any past due amounts, will still apply.

YOUR RIGHTS TO CHOOSE NOT TO ACCEPT THE CHANGES IN THIS NOTICE.

The changes described in this Notice will not become effective if you send us a written letter that you choose not to accept them. You may choose not to accept the Arbitration Agreement section, the Other Changes to your Agreement section, or both. If the only choice you make is to not accept the Arbitration Agreement section,

11

---

your Account will remain open. If you do not accept the Other Changes to your Agreement section, your Account will be closed. If you do not accept this change, your Account will be closed to further use (if it is not already closed). In any event, we must receive your letter no later than April 25, 2002. In your letter please include your name, address, account number and a statement that you do not want the Arbitration Agreement section, the Other Changes to your Agreement section, or both sections, to apply to your Account. If you do not specify which sections you choose not to accept, we will assume that you chose not to accept both sections and your Account will be closed. Your letter must be mailed to Chase Manhattan Bank USA, N.A., P.O. Box 15125, Wilmington, DE, 19850-5125. We must receive your written letter by the time indicated and at the address indicated or your choice(s) will not be effective; it is not sufficient to telephone us. If your letter is received by April 25, 2002 and you do not accept the Other Changes to your Agreement section, the changes in that section described above will not apply to your Account and you must pay off any outstanding balances on your Account in accordance with the payment and other applicable terms of your Agreement.

Please retain this Notice for your records.

Chase Manhattan Bank USA, N.A.

© 2002 Chase Manhattan Bank USA, N.A. All Rights Reserved.

12

NS-620 202

**EXHIBIT D**

EXCLUDING INTEREST, COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

## 1. Binding Arbitration.

This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

## 2. Claims Covered.

Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate in the context in which is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, solicitation or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning. Notwithstanding the foregoing, a Claim may be resolved by litigation and is not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will seek a recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and us. If one party wants a Claim to be resolved by arbitration, but the other party believes

the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by arbitration.

As used in this Arbitration Agreement, the term "Claims" includes claims that arose in the past, or arise in the present or the future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by you against us and any co-applicant, joint cardmember, or authorized user of your Account or (2) those brought by you and any co-bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in your Account, or your heirs or your trustee in bankruptcy against us. This means that even if a class action lawsuit or other representative action, those in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt

collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

## 3. Initiation of Arbitration.

The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association, JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to rules of one of the other two arbitration administrators. To exercise your choice, you must notify us of your choice by writing us at P.O. Box 15933, Wilmington, DE 19850-5933. Send us a copy of the notice you received and state which of the other two arbitration administrators you choose. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected administrator by an impartial third party chosen in accordance with this Arbitration Agreement and rules of the selected administrator. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and administrators, fees, and instructions for initiating arbitration by contacting the arbitration administrators.

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org
800-778-7879

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com
800-352-5267

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com
800-474-2371

### 4. Procedures and law applicable to arbitration.

A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to each party. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law. The arbitrator will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award any award authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

### 5. Costs.

At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you

prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

### 6. Enforcement, finality, appeals.

You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under the FAA. In addition, the non-prevailing party may appeal any award that exceeds $100,000 or that includes an award of punitive damages. Any request for an appeal must be filed in writing with the same arbitration administrator within 30 days of the receipt by the non-prevailing party of notice of the original award. The appeal shall be heard before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the majority vote. The cost of the appeal imposed by the

arbitration administrator shall be borne by the appealing party. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

### 7. Severability, survival.

This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party; and (iii) any transfer, sale, or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

## OTHER CHANGES TO YOUR AGREEMENT.

- **Regular Preferred interest rate for Advances and Prime Rate Index.** The regular Preferred interest rate for Advances will be changed to equal a variable rate of the Prime Rate Index plus 11.99%, with a minimum rate of a nominal ANNUAL PERCENTAGE RATE of 19.99% (daily periodic rate of .05477%).The Variable Rate section of your Agreement applies to this rate. The Prime Rate Index for this rate, and all other variable rates in your Agreement, will be the highest Prime Rate published in your region's edition of The Wall Street Journal in the "Money Rates" table of The Wall Street Journal on the last business day of each calendar month. The new Preferred Advances rate may vary based on changes in the Prime Rate Index, subject to the minimum rate. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your new Preferred Advances rate will be the minimum rate (19.99% APR).

- **Regular Preferred Interest rate for Advances not changed for certain accounts.** If your current Preferred Advances interest rate is a variable rate that is higher than the Prime Rate Index plus 11.99%, or if it is a fixed rate that is higher than 19.99% APR, then the new Preferred Advances interest rate will not apply to your Account and your current Preferred Advances interest rate will remain in effect. However, the Prime Rate Index for your current Preferred Advances interest rate will be the Prime Rate Index described above.

• **Non-Preferred minimum interest rate and Prime Rate Index.** We are changing the minimum rate for your existing variable Non-Preferred interest rate to a fixed nominal ANNUAL PERCENTAGE RATE of 22.99% (daily periodic rate of .062996%). The Non-Preferred rate applies to all balances on your Account when it is not in good standing under the conditions described in the Preferred Customer Pricing Eligibility" section of your Agreement. Your existing variable Non-Preferred rate will continue to be up to the Prime Rate Index plus your existing margin and may vary based on changes in the Prime Rate Index, subject to the minimum rate. The Prime Rate Index for the Non-Preferred rate will be the Prime Rate Index described above. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

• **Non-Preferred interest rate added for certain accounts.** If the current Agreement for your Account does not have in effect a "Preferred Customer Pricing Eligibility" section that describes how interest rates are determined in part by whether your Account is or is not in good standing, this section will be added to your Agreement and is described below. For such accounts, your variable Non-Preferred interest rate will be the Prime Rate Index described in the paragraph above. The Variable Rate section of your Agreement applies to this Non-Preferred rate. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

• **Preferred Customer Pricing Eligibility.** The "Preferred Customer Pricing Eligibility" section of your Agreement will be revised (or added if it is not part of your current Agreement) to provide that existing and new balances on your Account when a Non-Preferred rate is in effect will remain subject to the Non-Preferred rate until they are paid in full unless we waive the right to enforce that rate. If your Account meets the conditions for Preferred rates for a time period not to exceed 12 months, it may be eligible for Preferred rates again on new transactions. Historical information that precedes this change may be used to determine whether or not your Account meets the conditions of the revised (or new) section. This section will read as follows.

**Preferred Customer Pricing Eligibility.** Your Account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum Non-Preferred rate) described in your Agreement for each occurrence when you do not meet the conditions described below to be eligible for Preferred rates. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, your Account may again be eligible for Preferred rates for new Purchases, new Balance Transfers and new Advances, if for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another

occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other relationships with us and our affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

• **Late Payment Fee.** The Late Payment Fee in your Agreement will be changed as follows. The Late Payment Fee will be determined based on the Previous Balance on your monthly statement that shows the Late Payment Fee. That Previous Balance is the closing balance of your prior monthly statement for which we did not receive timely payment. The Late Payment Fee will also be determined based on whether or not a Non-Preferred interest rate is in effect on your monthly statement. The Late Payment Fee will be:

| Previous Balance | Late Fee |
| --- | --- |
| up to $150.00 | $15 |
| $150.01 to $1,200.00 | $29 |
| $1,200.01 or greater | $35 |
| Non-Preferred rate in effect | $35 |

This fee is owed if we do not receive the required minimum payment, in accordance with our payment instructions, by the time of day on the payment due date shown on your monthly statement.

• **Stop Payment Fee.** The Stop Payment Fee in your Agreement will be added to $29, if it has not been changed already. This fee will be imposed for each request made to stop payment on any check or other form of Advance drawn on your Account, or to withdraw a stop payment request.

• **Copy Fee.** The "Sales Slip or Duplicate Statement Fee" section in your Agreement will be amended to provide that the fee provided in this section will also be charged for any other record or document that we provide at your request.

• **Non-Preferred minimum interest rate and Prime Rate Index.** We are changing the minimum rate for your existing variable Non-Preferred interest rate to a fixed nominal ANNUAL PERCENTAGE RATE of 22.99% (daily periodic rate of .06299%). The Non-Preferred rate applies to all balances on your Account when it is not in good standing under the conditions described in the 'Preferred Customer Pricing Eligibility' section of your Agreement. Your existing variable Non-Preferred rate will continue to be up to the Prime Rate Index plus your existing margin and may vary based on changes in the Prime Rate Index, subject to the minimum rate. The Prime Rate Index for the Non-Preferred rate will be the current Prime Rate Index described above. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

• **Non-Preferred interest rate added for certain accounts.** If the current Agreement for your Account does not have in effect a 'Preferred Customer Pricing Eligibility' section that describes how interest rates are determined in part by whether your Account is or is not in good standing, this section will be added to your Agreement and is described below. For such accounts, your variable Non-Preferred interest rate will be the Prime Rate Index described above plus 14.99%, subject to the minimum rate described in the paragraph above. The Variable Rate section of your Agreement applies to this Non-Preferred rate. Based on the current Prime Rate Index, we estimate that as of the effective date of this change your Non-Preferred rate will be the minimum rate (22.99% APR).

• **Preferred Customer Pricing Eligibility.** The 'Preferred Customer Pricing Eligibility' section of your Agreement will be revised (or added if it is not part of your current Agreement) to provide that existing and new balances on your Account when a Non-Preferred rate is in effect will remain subject to the Non-Preferred rate until they are paid in full unless we waive the right to enforce that rate. If your Account meets the conditions for Preferred rates for a time period not to exceed 12 months, it may be eligible for Preferred rates again on new transactions. Historical information that precedes this change may be used to determine whether or not your Account meets the conditions of the revised (or new) section. This section will read as follows.

**Preferred Customer Pricing Eligibility.** Your Account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. On each monthly review, we may change your interest rates and impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum Non-Preferred rate) described in your Agreement. Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred rates will be effective with the billing cycle ending on the review date.

To be eligible for Preferred rates, the following conditions must be met as of the review date: you have made at least the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors; the credit limit on your Account has not been exceeded; and any payment on your Account has not been returned unpaid.

If you do not meet all of these conditions, then you will be in default under this Agreement and your Account may lose its Preferred rates. In this event, a Non-Preferred rate (subject to any minimum rate) will apply to all existing and new balances on your Account, and these balances will remain subject to a Non-Preferred rate until they are paid in full. When we review your Account in subsequent monthly reviews, your Account may again be eligible for Preferred rates for new Purchases, new Balance Transfers and new Advances if, for a time period not to exceed 12 months, the following conditions are met: your Account is open, you have made the required minimum payments when due on your Account and on all other loans or accounts with us and your other creditors, the credit limit on your Account has not been exceeded and any payment on your Account has not been returned unpaid. Notwithstanding the above, we may waive our rights, such as our right to enforce a Non-Preferred rate on existing and new balances until paid in full or to enforce any minimum Non-Preferred rate. However, if we do waive any of our rights and there is another

occurrence when you do not meet the conditions described above to be eligible for Preferred rates, we may again impose a Non-Preferred rate up to the maximum Non-Preferred rate (subject to any minimum rate) on all existing and new balances until they are paid in full.

We may obtain consumer credit reports from credit bureaus on you at any time in the future. We may use the reports and their contents, as well as information about your Account including its payment and/or usage history and your other relationships with us and our affiliates, to review your Account including for the purposes of determining its eligibility for Preferred rates and of establishing the Non-Preferred rates that may apply to your Account.

• **Late Payment Fee.** The Late Payment Fee in your Agreement will be changed as follows. The Late Payment Fee will be determined based on the Previous Balance on your monthly statement that shows the Late Payment Fee. That Previous Balance is the closing balance of your prior monthly statement for which we did not receive timely payment. The Late Payment Fee will also be determined based on whether or not a Non-Preferred interest rate is in effect on your monthly statement. The Late Payment Fee will be:

| Previous Balance | Late Fee |
| --- | --- |
| up to $150.00 | $15 |
| $150.01 up to $1,200.00 | $29 |
| $1,200.01 or greater | $55 |
| Non-Preferred rate in effect | $55 |

This fee is owed if we do not receive the required minimum payment, in accordance with our payment instructions, by the time of day on the payment due date shown on your monthly statement.

• **Stop Payment Fee.** The Stop Payment Fee in your Agreement will be changed to $29, if it has not been changed already. This fee will be imposed for each request made to stop payment on any check or other form of Advance drawn on your Account, or to withdraw a stop payment request.

• **Copy Fee.** The 'Sales Slip or Duplicate Statement Fee' section in your Agreement will be amended to provide that the fee provided in this section will also be charged for any other record or document that we provide at your request.

10

9

8

## 16. GOVERNING LAW

THE TERMS AND ENFORCEMENT OF THIS AGREEMENT AND YOUR ACCOUNT SHALL BE GOVERNED AND INTERPRETED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT STATE LAW APPLIES, THE LAW OF DELAWARE, WITHOUT REGARD TO CONFLICT-OF-LAW PRINCIPLES. THE LAW OF DELAWARE, WHERE WE AND YOUR ACCOUNT ARE LOCATED, WILL APPLY NO MATTER WHERE YOU LIVE OR USE THE ACCOUNT.

## 17. FOR INFORMATION

Please call the Cardmember Service telephone number on your card or billing statement if you have any questions about your account or this agreement.

## 18. YOUR BILLING RIGHTS

**Keep This Notice For Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case Of Errors Or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the Cardmember Service address shown on your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us at least three business days before the automatic payment is scheduled to occur.

**Your Rights And Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50.00 of the questioned amount, even if your bill was correct.

**Special Rules for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. This right does not apply to check transactions. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Copyright © 2004 JPMorgan Chase & Co. All rights reserved.

12          ADV2039    10/04

# Cardmember Agreement

## 1. ACCEPTANCE OF THIS AGREEMENT

This agreement governs your credit card account with us referenced on the card carrier containing the card for this account. Any use of your account is covered by this agreement. Please read the entire agreement and keep it for your records. The entire agreement may be in separate parts, including this document and a "Rates and Fees" table that is expressly made a part of this agreement. You authorize us to pay for and charge your account for all transactions made on your account. You promise to pay us for all transactions made on your account, as well as any fees or finance charges. If this is a joint account, each of you, together and individually, is responsible for paying all amounts owed, even if the account is used by only one of you.

Please sign the back of your credit card when you receive it. You will be bound by this agreement if you or anyone authorized by you use your account for any purpose, even if you don't sign your card. Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and you have not used your account for any purpose.

Throughout this agreement, the words "we", "us" and "our" mean Chase Manhattan Bank USA, N.A., the issuer of your credit card and account. The words "you", "your" and "yours" mean all persons responsible for complying with this agreement, including the person who applied for the account and the person to whom we address billing statements, as well as any person who agrees to be liable on the account. The word "card" means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this agreement.

## 2. USING YOUR ACCOUNT

Your account is a consumer account and should be used only for personal, family or household purposes. Unless we agree or it is required by law, we will not be responsible for merchandise or services purchased or leased through use of your account. You promise to use your account only for valid and lawful transactions. For example, internet gambling may be illegal in some places. It is not our responsibility to make sure that you use your account only for permissible transactions, and you will remain responsible for paying for a transaction even if it is not permissible.

**Types of Transactions:**

- **Purchases:** You may use your card to pay for goods or services.
- **Checks:** We may provide you cash advance checks or balance transfer checks as a way to use your account. We also refer to them in this agreement as a check or checks. You may use a check to pay for goods or services, to transfer balances to your account, or for other uses we allow. But you may not use these checks to transfer balances to this account from other accounts with us or any of our related companies. Only the person whose name is printed on the check may sign the check. Cash advance checks may also be referred to as convenience checks.
- **Balance Transfers:** You may transfer balances from other accounts or loans with other credit card issuers or other lenders to this account, or other balance transfers we allow. But you may not transfer balances to this account from other accounts with us or any of our related companies. If a portion of a requested balance transfer would exceed your available credit line, we may process a partial balance transfer up to your available credit line.
- **Cash Advances:** You may use your card to get cash from automatic teller machines, or from financial institutions accepting the card; or to obtain travelers checks, foreign currency, money orders, wire transfers or similar cash-like charges; or to obtain lottery tickets, casino gaming chips, race track wagers or for similar betting transactions. You may also use a third party service to make a payment on your behalf and bill the payment to this account. Cash Advances may also be referred to as Advances.
- **Overdraft Advances:** If you have an eligible checking account with one of our related banks, you may link this account to your checking account with our related bank to cover an overdraft on that checking account under the terms of this agreement and your checking account agreement.

**Billing Cycle:**

In order to manage your account, we divide time into periods called "billing cycles." Each billing cycle is approximately one month in length. For each calendar month, your account will have a billing cycle that ends in that month. Your account will have a billing cycle ending in each calendar month whether

1

ADV2039
Portfolio
1004_Portfolio
Cell #: ?
Chase Standard
Creative Pkg:C
Mail Date:?

Last Edit Time: 9/15/04:6
Current Time: 9/15/04; 6:
User name: sysman3*

Page width: 20.000 in
Page height: 8.500 in
Fonts:ZurichBT-RomanC
ZurichBT-BoldCondensed
Helvetica
ZurichBT-ItalicCondensed

Colors on this page/spread
Black

Important: Colors will not

Images:

Fold                3.5"              Fold              3.5" Cover

**EXHIBIT E**

ADV2039L.ps  9/15/04 6:20 PM  Page 2

or not there is a billing statement for that billing cycle.

**Authorized Users:**

If you allow someone to use your account, that person will be an authorized user. You should think carefully before allowing anyone to become an authorized user because you are allowing that person to use the account as you can. You will remain responsible for the use of your account and each card issued on your account according to the terms of this agreement. This includes your responsibility for paying all charges on your account made by an authorized user.

You may request an additional card for use by an authorized user on your account. If you do so, this account may appear on the credit report of that authorized user.

You must notify us to terminate an authorized user's permission to use your account. If you notify us, we may close the account and/or issue a new card or cards with a different account number. You should also recover and destroy any cards, checks or any other means of access to your account from that authorized user.

**Credit Line:**

Your credit line appears on your billing statements. Your billing statement also may show that only a portion of your credit line may be used for cash advances. Cash advance checks, cash advances and overdraft advances are charged against the cash advance portion of your credit line, and all other transactions are charged against your credit line. You are responsible for keeping track of your account balance, including any fees and finance charges, and making sure it remains below your credit line. If your account balance is over your credit line for any reason, we may charge you an overlimit fee as described in this agreement. We may, but are not required to, authorize charges that go over your credit line. If your account balance is over your credit line, and you must pay us immediately if we ask you to. This agreement applies to any balance over your credit line.

At our discretion, we may increase, reduce, or cancel your credit line, or the cash advance portion of your credit line, at any time. However, if you have asked us not to do so, we will not increase your credit line. A change to your credit line will not affect your obligation to pay us.

**Transactions in Foreign Currencies:**

If you make a transaction in a foreign currency, Visa USA Inc. or MasterCard International, Inc. will convert the transaction into U.S. dollars by using its respective currency conversion procedures in effect on the date it processes the transaction. Currently, each of them uses either a wholesale market rate or a government-mandated rate and adds one percent to that rate. We then add two percent to the figure provided to us. If either Visa USA or MasterCard International ceases adding one percent to the wholesale or government-mandated conversion rate, we will add three percent to the figure provided to us by that entity. The rate in effect on the processing date may differ from the rate on the date you used your card or account. The same process will be used if a transaction must be converted back into a foreign currency such as for a reversal.

**Refusal to Authorize Transactions:**

We may, but are not required to, decline a transaction on your account for any of the following reasons:

* because of operational considerations,
* because your account is in default,
* if we suspect fraudulent or unlawful activity or,
* in our discretion, for any other reason.

We are not responsible for any losses if a transaction on your account is declined for any reason, either by us or a third party, even if you have sufficient credit available.

For on-line transactions, we may require that you register your account with an authorization system that we select. We will notify you if we want you to register. If you do not register, we may decline your on-line transactions.

**Refusal to Pay Checks:**

Each check you write is your request for funds. When we receive a check for payment, we may review your account to decide whether to authorize that check. We may, but are not required to, reject and return unpaid a check for any reason, including the following examples:

* We or one of our related companies is the payee on the check.
* Your credit line or cash advance portion of your credit line has been exceeded, or would be exceeded if we paid the check.

* The check is post-dated. If a post-dated check is paid, resulting in another check being returned or not paid, we are not responsible.
* You have used the check after the date specified on it.
* You are in default or would be if we paid the check.

**Lost or Stolen Cards, Checks or Account Numbers:**

If any card, check, account number or other means to access your account is lost or stolen, or you think someone used or may use them without your permission, you must notify us at once by calling the Cardmember Service telephone number shown on your card or billing statement. Do not use your account after you notify us, even if your card, check, account number or other means to access your account is found or returned. We may terminate or suspend your credit privileges when you notify us of any loss, theft or unauthorized use related to your account. You may be liable if there is unauthorized use of your account from which you receive no benefit, but you will not be liable for more than $50.00 of such transactions, and you will not be liable for any such transactions made after you notify us of the loss, theft or unauthorized use. However, you must identify for us the unauthorized charges from which you received no benefit.

We may require you to provide us information in writing to help us find out what happened. We may also require you to comply with certain procedures in connection with our investigation.

**3. PAYMENTS**

**Payment Instructions:**

Your billing statement and accompanying envelope include instructions you must follow for making payments and sets forth the date and time by which we must receive the payment.

You agree to pay us amounts you owe in U.S. dollars drawn on funds on deposit in a U.S. financial institution or the U.S. branch of a foreign financial institution using a payment check, money order or automatic debit that will be processed or honored by your financial institution. We will not accept cash payments. Your total available credit may not be restored for up to 15 days after we receive your payment.

Any payment check or other form of payment which you send to us for less than the full balance that is marked "paid in full" or with a similar notation or that you otherwise tender in full satisfaction of a disputed amount (conditional payments), must be sent to us at the conditional payments address listed on your monthly statement. We reserve all our rights regarding such payments. For example, if it is determined there is no valid dispute or if any such payment is received at any other address, we may accept the payment and you will still owe any remaining balance. We may refuse to accept any such payment by returning it to you, not cashing it or by destroying it. All other payments that you make should be sent to the regular payment address shown on your monthly statements.

We reserve the right to electronically collect your eligible payment checks, at first presentment and any representment, from the bank account on which the check is drawn. Our receipt of your payment checks is your authorization for us to collect the amount of the check electronically, or, if needed, by a draft drawn against the bank account. Payment checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank. Your bank account may be debited as early as the same day we receive your payment. The original payment check will be destroyed and an image will be maintained in our records.

**Minimum Payment:**

You agree to pay at least the minimum payment due, as shown on your billing statement, so that we receive it by the date and time payment is due. You may pay more than the minimum payment due and may pay the full amount you owe us at any time. If you have a balance that is subject to finance charges, the sooner you pay us, the less you will pay in finance charges because finance charges accrue on your balance each day.

Your billing statement shows your beginning balance and your ending balance (the "New Balance" on your billing statement). If your minimum payment due is $10 or less, your minimum payment due will be the New Balance. Otherwise, it will be any amount past due; plus one of the following amounts: $10, 2% of the New Balance (reduced to the next lowest dollar) or the total finance charge shown on your statement (rounded up to the nearest dollar), whichever is greatest. But if any APR on your account is greater than 23% or your balance is over your credit line, we may require a minimum payment that is up to the sum of any amount past due; plus any amount over your credit line; plus the greater of $10 and an amount up to 5% of the New Balance (reduced to the next lowest dollar). If the percentage of the New Balance you are required to pay increases, it will not decrease when your

2

3

3.5"                                   Fold                                   3.5"



APR decreases or your New Balance is under your credit line. For either calculation above, we may add to your minimum payment due any fees provided in this agreement such as late or overlimit fees.

**Payment Allocation:**
You agree that we are authorized to allocate your payments and credits in a way that is most favorable to or convenient for us. For example, you authorize us to apply your payments and credits to balances with lower APRs (such as promotional APRs) before balances with higher APRs.

**Credit Balances:**
You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges or fees billed to your account.

**Automatic Charges:**
You may authorize a third party to automatically charge your account for repeat transactions (for example, monthly utility charges, memberships and insurance premiums). If automatic charges are stopped for any reason (including because your account is closed or suspended for any reason) or your account number changes, you are responsible for notifying the biller and paying these charges directly. If your account number changes, we may, but are not required to, pay from your new account number charges that you authorized to be billed to your old account number.

**Promotions:**
From time to time we may offer special terms for your account. If we do, we will notify you about the terms of the offer and how long they will be in effect. Any promotion is subject to the terms of this agreement, as modified by the promotional offer.

**Delayed Payment Program:**
We may offer you, in our discretion, a special promotional program that applies to eligible transactions made and/or posted to your account during a specified promotional period. We will notify you about the details of the program when we offer it to you. These transactions, if the offer provides, may be required to meet or exceed a specified dollar amount and/or take place at an eligible merchant location. If the offer provides, eligible transactions may be omitted from your account balance for the purpose of calculating the minimum payment due each month, or they may not be subject to any periodic rate finance charges for a specified period of time. If any portion of eligible transactions is not paid in full by the ending date of the program, or if your account is in default at any time during the program, that portion of the balance will thereafter be included in the minimum payment calculation and accrue finance charges in accordance with the regular terms of your agreement.

**4. FINANCE CHARGES**

**Daily Periodic Rates and Annual Percentage Rates:**
Your **annual percentage rates** ("APRs") and the corresponding daily periodic rates are listed on the "Rates and Fees" table (the "Table" or "Pricing Schedule") that is at the end of this document or provided separately. To get the daily periodic rate we divide the APR by 365, and in effect always round up at the fifth place to the right of the decimal point. We may also refer to standard rates and promotional rates as preferred rates and default rates as non-preferred rates. We may also refer to any rate or fee disclosed in the Table as a rate or fee disclosed in a Pricing Schedule Box.

**Variable Rates:**
One or more APRs that apply to your account may vary with changes to the Prime Rate. When you have an APR that varies with changes to the Prime Rate, we calculate the APR by adding a margin to the Prime Rate published in *The Wall Street Journal* two business days before the Closing Date shown on your billing statement. The "Prime Rate" is the highest (U.S.) Prime Rate published in the Money Rates section of *The Wall Street Journal*. If *The Wall Street Journal* stops publishing the Prime Rate, we will select a similar reference rate and inform you on your billing statement or through a separate notice.

A "margin" is the percentage we add to the Prime Rate to calculate the APR. A "business day" is any day that is not a weekend or federal holiday. The Rates and Fees Table shows which rates, if any, are variable rates. It also lists the margin for each variable rate and any minimum daily periodic rate and corresponding APR.

Two business days before the Closing Date shown on your billing statement, we see what the Prime Rate is. We then add the applicable margin to that Prime Rate to get the APR. The daily periodic rate is calculated as described above.

If our calculation results in a change to a daily periodic rate from the previous billing cycle because the Prime Rate has changed, the new rate will apply as of the first day of your billing cycle that ends in the calendar month in which we made the calculation. If the daily periodic rate increases, you will have to pay a higher periodic finance charge and may have to pay a higher minimum payment.

**Default Rates:**
Your APRs also may vary if you are in default under this agreement or any other agreement you have with us or any of our related companies for any of the following reasons:
• We do not receive, for any payment that is owed on this account or any other account or loan with us, at least the minimum payment due by the date and time due.
• You exceed your credit line on this account.
• You fail to make a payment to another creditor when due.
• You make a payment to us that is not honored by your bank.
• To the extent allowed by law, if, at any time after your account is closed, we demand immediate payment of your outstanding balance and we do not receive payment within the time we specify.

If any of these events occurs, we may increase the APRs (including any promotional APR) on all balances up to a maximum of the default rate stated in the Rates and Fees Table. We may consider the following factors to determine your default rate: the length of time your account has been open; the existence, seriousness and timing of defaults on your account; other indications of your account usage and performance; information about your other relationships with us or any of our related companies; and information we obtain from consumer credit reports obtained from credit bureaus. The default rate will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed.

If we decide not to increase your APR even though there is a default or if we do not increase your APR up to the maximum default rate stated in the Rates and Fees Table, we reserve our right to increase your APR in the event of any future default. We may in our discretion determine to charge reduced default rates or reinstate standard rates for all or selected balances on your account. We may also refer to this portion of the agreement as the Preferred Customer Pricing Eligibility section.

**Finance Charge Calculation—Two-Cycle Average Daily Balance Method (Including New Purchases) for Purchases and Average Daily Balance Method (Including New Transactions) for Other Transactions:**
We calculate periodic finance charges separately for each balance associated with a different category of transactions (for example, purchases, balance transfers, cash advance checks, balance transfer checks, cash advances, overdraft advances, and each promotion). These calculations may combine different categories with the same daily periodic rates. This is how it works:

We calculate the periodic finance charges for purchases in two steps, as follows:
• First, for each day of the billing cycle, we multiply the daily balance by the daily periodic rate.
• Second, for each day of the previous billing cycle we multiply the daily balance for purchases made in that billing cycle by the same daily periodic rate. However, we do not do this second step if we received payment in full of the New Balance on your previous billing statement by the date and time the minimum payment was due or if a periodic finance charge was already billed on that balance.

We calculate the periodic finance charges for purchases subject to a promotional rate the same way, but we use the promotional rate.

We calculate periodic finance charges for balance transfers, cash advance checks, balance transfer checks, cash advances, and overdraft advances by multiplying the daily balance for each of those categories by the daily periodic rate for each of those categories, each day. You may have overdraft advances only if you have linked this account to a checking account with one of our related banks. We calculate the periodic finance charges for balance transfers, cash advance checks, balance transfer checks and cash advances subject to a promotional rate the same way, but we use the promotional rate.

To get the daily balance for each day for each category:

4

5

- We take the beginning balance for that day.
- We add to that balance any new transactions, fees, other charges, and debit adjustments that apply to that category. We add a new purchase, cash advance, balance transfer or overdraft advance to the daily balance as of the transaction date, or a later date of our choice. We add a new cash advance check or balance transfer check to the daily balance as of the date the cash advance check or balance transfer check is deposited by a payee, or a later date of our choice.
- We subtract from that balance any payments, credits, or credit adjustments that apply to that category and that are credited as of that day.
- We treat a credit balance as a balance of zero.

To get the beginning balance for each category for the next day, we add the daily periodic finance charge to the daily balance. If more than one daily periodic rate could apply to a category because the rate for the category may vary based on the amount of its average daily balance, we will use the daily periodic rate that applies for the average daily balance amount at the end of the billing cycle to calculate the daily periodic finance charge each day. This agreement provides for daily compounding of finance charges.

To get the total periodic finance charge for the billing cycle, we add all of the daily periodic finance charges for each category for each day during that billing cycle, plus the daily periodic finance charges on purchases, if any apply, for the previous billing cycle. However, if any periodic finance charge is due, we will charge you at least the minimum periodic finance charge stated in the Rates and Fees Table. If it is necessary to add an additional amount to reach the minimum finance charge, we add that amount to the balance for purchases made during the billing cycle.
The total finance charge on your account for a billing cycle will be the sum of the periodic finance charges plus any transaction fee finance charges.

For each category we calculate an average daily balance (including new transactions) for the billing cycle by adding all your daily balances and dividing that amount by the number of days in the billing cycle. If a periodic finance charge for purchases made during the previous billing cycle applies, the average daily balance for those purchases is calculated the same way. If you multiply the average daily balance for a category by that category's daily periodic rate, and multiply the result by the number of days in the billing cycle, the total will equal the periodic finance charges for that balance attributable to that billing cycle, except for minor variations due to rounding.
**Grace Period and Accrual of Finance Charges:**
We accrue periodic finance charges on a transaction, fee, or finance charge from the date it is added to your daily balance until payment in full is received on your account. However, we do not charge periodic finance charges on new purchases billed during a billing cycle if we receive payment of your New Balance by the date and time your minimum payment is due and we received payment of your New Balance on your previous billing statement by the date and time your payment was due. This exception or "grace period" only applies to purchases and does not apply to balance transfers, balance transfer checks, cash advances, cash advance checks or overdraft advances.
**Transaction Fees for Cash Advances:**
We may charge you a cash advance fee in the amount stated in the Rates and Fees Table for each of the following transactions:
- cash advance checks;
- cash advances.
In addition, if you use a third party service to make a payment on your behalf and the service charges the payment to this account, we may charge a transaction fee for the payment.
These transaction fees are **finance charges**. We add the fee to the balance for the related category as of the transaction date of the cash advance.
**Transaction Fees for Balance Transfers:**
We may charge you a transaction fee in the amount stated in the Rates and Fees Table for each of the following transactions:
- balance transfer checks;
- balance transfers.
These transaction fees are **finance charges**. We add the fee to the balance for the related category as of the transaction date of the balance transfer. For example, a transaction fee for a balance transfer would be added to your

6

balance transfer balance.
**5. OTHER FEES AND CHARGES**
We may charge the following fees. The amounts of these fees are listed in the Rates and Fees Table. These fees will be added to the balance for purchases made during the billing cycle.
**Annual Fee:**
If your account has an annual fee, it will be billed each year or in monthly installments (as stated in the Rates and Fees Table), whether or not you use your account, and you agree to pay it when billed. The annual fee is non-refundable unless you notify us that you wish to close your account within 30 days of the date we mail your billing statement on which the fee is charged and at the same time, you pay your outstanding balance in full. Your payment of the annual fee does not affect our right to close your account or limit your right to make transactions on your account. If your account is closed by you or us, we will continue to charge the annual fee until you pay your outstanding balance in full and terminate your account relationship.
**Late Fee:**
We may charge a late fee if we do not receive at least your required minimum payment by the date and time shown on your billing statement. We will calculate the late fee based on the Previous Balance shown on the billing statement on which the late fee appears. We may also refer to this fee as the late payment fee or charge.
**Overlimit Fee:**
If your account balance is over your credit line at any time during a billing cycle, even if only for a day, we may charge an overlimit fee. We may charge this fee even if your balance is over the credit line because of a finance charge or fee we imposed or a transaction we authorized. We will not charge more than one overlimit fee for any billing cycle. But we may charge an overlimit fee in subsequent billing cycles, even if no new transactions are made on your account, if your account balance still is over your credit line at any time during the subsequent billing cycles.
**Return Payment Fee:**
If (a) your payment check or similar instrument is not honored, (b) an automatic debit or other electronic payment is returned unpaid, or (c) we must return a payment check because it is not signed or cannot be processed, we may charge a return payment fee. We may also refer to this fee as the returned payment fee.
**Return Check Fee:**
If (a) we stop payment on a cash advance check or balance transfer check at your request, or (b) we refuse to pay a cash advance check or balance transfer check, we may charge a return check fee. We may also refer to this fee as the stop payment fee and the declined check fee.
**Administrative Fees:**
If you request a copy of a billing statement, sales draft or other record of your account or if you request two or more cards or any special services (for example, obtaining cards on an expedited basis), we may charge you for these services. We may also refer to these fees as the copy fee and the card replacement fee, respectively. In addition, if a Cardmember Service Representative initiates an electronic payment at your request, we may charge you a fee for this service. We may also refer to this fee as the expedited payment fee. However, we will not charge you for copies of billing statements, sales drafts or similar documents that you request for a billing dispute you may assert against us under applicable law. Other fees may apply for other services we provide that we will inform you about when we offer the service.
**6. DEFAULT/COLLECTION**
We may consider you to be in default if any of these occurs:
- We do not receive at least the minimum amount due by the date and time due as shown on your billing statement.
- You exceed your credit line.
- You fail to comply with the terms of this agreement or any agreement with one of our related companies.

ADV2039    10/04

7

ADV2039
Portfolio
1004_Portfolio
Cell #: ?
Chase Standard
Creative Pkg:C
Mail Date:?

Last Edit Time: 9/15/04:6
Current Time: 9/15/04: 6:
User name: sysman3*

Page width: 20.000 in
Page height: 8.500 in
Fonts:ZurichBT-RomanCo
ZurichBT-BoldCondensed
Times-Roman
Helvetica
ZurichBT-ItalicCondensed

Colors on this page/spread
Black

Important: Colors will not

Images:

- You file for bankruptcy.
- We obtain information that causes us to believe that you may be unwilling or unable to pay your debts to us or to others on time.
- You become incapacitated or in the event of your death.

If we consider your account to be in default, we may close your account without notice and require you to pay your unpaid balance immediately. We also may require you to pay interest at the rate of two percent (2%) a month on the unpaid balance when we deem your account to be six or more billing cycles past due.

To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, court costs, and all other expenses of enforcing our rights under this agreement.

### 7. CLOSING YOUR ACCOUNT

You may close your account at any time. If you call us to close your account, we may require that you confirm your request in writing.

We may close your account at any time or suspend your credit privileges at any time for any reason without prior notice except as required by applicable law. If we close your account, we will not be liable to you for any consequences resulting from closing your account or suspending your credit privileges.

If you or we close your account, you and any authorized users must immediately stop using your account and destroy all cards, checks or other means to access your account or return them to us upon request. You will continue to be responsible for charges to your account, even if they are made or processed after your account is closed and you will be required to pay the outstanding balance on your account according to the terms of this agreement. In addition, to the extent allowed by law, we may require you to pay the outstanding balance immediately and charge the default rate if we do not receive payment within the time we specify.

### 8. ARBITRATION AGREEMENT

PLEASE READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT SUCH AS THAT IN THE FORM OF A PRIVATE ATTORNEY GENERAL ACTION, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO A COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.

**Binding Arbitration.** This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

**Parties Covered.** For the purposes of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers,

directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you asser against us.

**Claims Covered.** Either you or we may, without the other's consent, elec mandatory, binding arbitration of any claim, dispute or controversy by eithe you or us against the other, or against the employees, parents, subsidiaries affiliates, beneficiaries, agents or assigns of the other, arising from o relating in any way to the Cardmember Agreement, any prior Cardmembe Agreement, your credit card Account or the advertising, application o approval of your Account ("Claim"). This Arbitration Agreement governs a Claims, whether such Claims are based on law, statute, contract regulation, ordinance, tort, common law, constitutional provision, or an legal theory of law such as respondent superior, or any other legal o equitable ground and whether such Claims seek as remedies mone damages, penalties, injunctions, or declaratory or equitable relief. Claim subject to this Arbitration Agreement include Claims regarding th applicability of this Arbitration Agreement or the validity of the entir Cardmember Agreement or any prior Cardmember Agreement. Thi Arbitration Agreement includes Claims that arose in the past, or arise in th present or the future. As used in this Arbitration Agreement, the term Clair is to be given the broadest possible meaning.

Claims subject to arbitration include Claims that are made as counterclaims cross claims, third party claims, interpleaders or otherwise, and a party wh initiates a proceeding in court may elect arbitration with respect to any suc Claims advanced in the lawsuit by any party or parties.

As an exception to this Arbitration Agreement, you retain the right to pursu in a small claims court any Claim that is within that court's jurisdiction an proceeds on an individual basis. If a party elects to arbitrate a Claim, th arbitration will be conducted as an individual action. Neither you nor w agree to any arbitration on a class or representative basis, and the arbitratc shall have no authority to proceed on such basis. This means that even if class action lawsuit or other representative action, such as that in the forr of a private attorney general action, is filed, any Claim between us relate to the issues raised in such lawsuits will be subject to an individua arbitration claim if either you or we so elect.

No arbitration will be consolidated with any other arbitration proceedin without the consent of all parties. The only Claims that may be joined in a individual action under this Arbitration Agreement are (1) those brought b us against you and any co-applicant, joint cardmember, or authorized use of your Account, or your heirs or your trustee in bankruptcy or (2) thos brought by you and any co-applicant, joint cardmember, or authorized use of your Account, or your heirs or your trustee in bankruptcy against us.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choos one of the following three arbitration administrators: American Arbitratic Association; JAMS/Endispute ("JAMS"); or National Arbitration Forun These administrators are independent from us. The administrator does nc conduct the arbitration. Arbitration is conducted under the rules of th selected arbitration administrator by an impartial third party chosen i accordance with the rules of the selected arbitration administrator and a may be provided in this Arbitration Agreement. Any arbitration hearing tha you attend shall be held at a place chosen by the arbitrator or arbitratio administrator within the federal judicial district in which you reside at th time the Claim is filed, or at some other place to which you and we agre in writing. You may obtain copies of the current rules of each of the thre arbitration administrators, information about arbitration and arbitration fee: and instructions for initiating arbitration by contacting the arbitratio administrators.

**American Arbitration Association,** 335 Madison Avenue, Floor 10, New York, NY 10017-4605, Web site: www.adr.org, 800-778-7879

**JAMS,** 1920 Main Street, Suite 300, Irvine, CA 92610, Web site: www.jamsadr.com, 800-352-5267

**National Arbitration Forum,** P.O. Box 50191, Minneapolis, MN 55405, Web site: www.arbitration-forum.com, 800-474-2371

**Procedures and Law applicable in arbitration.** A single, neutral arbitrat will resolve Claims. The arbitrator will either be a lawyer with at least te years experience or a retired or former judge. The arbitration will b conducted under the applicable procedures and rules of the arbitratio administrator that are in effect on the date the arbitration is filed unles those procedures and rules are inconsistent with this Arbitratic

8

9

3.125"            Fold            3.25"

Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. If the law authorizes such relief, the arbitrator may award punitive damages or attorney fees. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon a request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

**Costs.** We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500 upon receipt of proof of payment. Additionally, if there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. The payment of any such hearing fees by us will be made directly to the arbitration administrator selected by you or us pursuant to this Arbitration Agreement. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party.

**Enforcement, finality, appeals.** Failure or any delay in enforcing this Arbitration Agreement at any time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Each party will bear their own fees, costs and expenses for any appeal, but a party may recover any or all fees, costs and expenses from another party, if the majority of the panel of arbitrators, applying applicable law, so determines. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

**Severability, survival.** This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party or any similar proceeding initiated by you or on your behalf; and (iii) payment of the debt in full by you or by a third party. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

## 9. CHANGES TO THIS AGREEMENT

We can change this agreement at any time, regardless of whether you have access to your account, by adding, deleting, or modifying any provision. Our right to add, delete, or modify provisions includes financial terms, such as the APRs and fees, and other terms such as the nature, extent, and enforcement of the rights and obligations you or we may have relating to this agreement. Modifications, additions, or deletions are called "Changes" or a "Change".

We will notify you of any Change if required by applicable law. These Changes may be effective with notice only, at the time stated in our notice, in accordance with applicable law. Unless we state otherwise, any Change will apply to the unpaid balances on your account and to new transactions. The notice will describe any rights you may have with respect to any

Change, and the consequences if you do or do not exercise those rights. For example, the notice may state that you may notify us in writing by a specified date if you do not accept certain Changes we are making. If you notify us in writing that you do not accept the Changes, your account may be closed (if it is not already closed) and you will be obligated to pay your outstanding balance under the applicable terms of the agreement. If you do not notify us in writing by the date stated in the notice, or if you notify us but then use your account after the date stated in the notice, you will be deemed to accept all Changes in the notice and to accept and confirm all terms of your agreement and all Changes in prior notices we have sent you regardless of whether you have access to your account.

## 10. CREDIT INFORMATION

We may periodically review your credit history by obtaining information from credit bureaus and others.

We may report information about you and your account to credit bureaus, including your failure to pay us on time. If you request additional cards on your account for others, we may report account information in your name as well as in the names of those other people.

If you think we have reported inaccurate information to a credit bureau, you may write to us at the Cardmember Service address listed on your billing statement. Please include your name, address, account number, telephone number and a brief description of the problem. If available, please provide a copy of the credit bureau report in question. We will promptly investigate the matter and, if our investigation shows that you are right, we will contact each credit bureau to which we reported the information and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone. We will also notify the credit bureau that you dispute the information unless you let us know that you no longer dispute the information.

## 11. NOTICES/CHANGE OF PERSONAL INFORMATION

We will send cards, billing statements and other notices to you at the address shown in our files. Or, if this is a joint account, we can send billing statements and notices to any joint account holder. Notice to one of you will be considered notice to all of you and all of you will remain obligated on the account.

If you change your name, address, or home or business telephone number or email address (if you elect to receive billing statements or other notices on line), you must notify us immediately in writing at the address shown on the back of your billing statement. We may, at our option, accept mailing address corrections from the United States Postal Service.

## 12. TELEPHONE MONITORING AND RECORDING

We, and if applicable, our agents, may listen to and record your telephone calls with us. You agree that we, and if applicable, our agents, may do so, whether you or we initiate the telephone call.

## 13. ILLINOIS CARDMEMBERS: INFORMATION SHARING

Our Privacy Policy, which you have received, describes our information sharing practices and gives directions on how to opt out, or direct us to limit the sharing of personal information about you with companies or organizations outside of our family of companies.

Illinois law provides that we may not share information about you with companies or other organizations outside of our family of companies unless you authorize the disclosure or unless the disclosure falls under another exception in the law (such as sharing information to process your transactions or in response to a subpoena). You hereby agree that, if you choose not to exercise the opt out described in our Privacy Policy, you will be deemed to have authorized us to share personal information we have about you (including information related to any of the products or services you may have with any of our companies) with companies or other organizations outside of our family of companies.

## 14. ENFORCING THIS AGREEMENT

We can delay enforcing or not enforce any of our rights under this agreement without losing our right to enforce them in the future. If any of the terms of this agreement are found to be unenforceable, all other terms will remain in full force.

## 15. ASSIGNMENT

We may assign your account, any amounts you owe us, or any of our rights and obligations under this agreement to a third party. The person to whom we make the assignment will be entitled to any of our rights that we assign to that person.

10

11

CCSI0266

## IMPORTANT CHANGE IN TERMS NOTICE FOR CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR CARDMEMBER AGREEMENT— PLEASE READ AND RETAIN FOR YOUR RECORDS

ADV2264
Portfolio
0205_Portfolio
: ?

ve Pkg:Feb 05 Chase Re
)ate:?

me: 1/13/05;4:45:25 PM
ie: 1/13/05; 4:45:28 PM
sysman3*

10.375 in
7,000 in
iBT-RomanCondensed
oldCondensed

We would like to explain certain changes in the ter Cardmember Agreement for your account ("Agreement"). § terms in this Notice may already be in effect on your accou not change. Any terms on your account not changed her effect. To help you understand the changes in terms on yo we explain the most important changes in the Summary of t below.

Please read carefully the Summary of New Terms. Th described in Sections 1 and 2 of the Summary will take billing cycles ending on or after April 1, 2005. The change in Section 3 of the Summary will take effect as early cycles ending on or after August 1, 2005. After the Sun describe your rights to choose not to accept the changes in and how to exercise those rights. The changes in terms will existing and future balances on your account.

Colors on this page/spread:
Black

Important: Colors will not be listed accurately if images are missing.

Images:

### SUMMARY OF NEW TERMS:

**SECTION 1 (Effective for billing cycles ending on or after April 1, 2005)**

- If any of your regular (standard) interest rates will be changed, they appear in the Amendments part of this Notice.

**SECTION 2 (Effective for billing cycles ending on or after April 1, 2005)**

- The late fee will be $15 if the balance is up to but not including $250, and $39 if the balance is $250 and over. However, if the default rate is in effect on a monthly statement, we may charge a late fee of $39 regardless of the amount of your balance.

- The foreign currency transaction terms will be expanded to cover other international transactions.

- The arbitration terms will be modified, and certain other terms in the Agreement will be clarified.

**SECTION 3 (Effective as early as billing cycles ending on or after August 1, 2005)**

- The minimum payment calculation will be revised to permit the addition of certain fees and finance changes as part of the minimum payment.

1

**EXHIBIT F**

The following amends the **Initiation of Arbitration** section of the **ARBITRATION AGREEMENT** that is part of your Agreement, to remove references to JAMS/Endispute. JAMS will no longer be available as a choice for an arbitration administrator for any Claim filed by either you or us under the Arbitration Agreement after the effective date of this amendment.

**Initiation of Arbitration.** The party filing a Claim in arbitration must choose one of the following two arbitration administrators: American Arbitration Association or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration administrators, information about arbitration and arbitration fees, and instructions for initiating arbitration by contacting the arbitration administrators as follows: American Arbitration Association 335 Madison Avenue, Floor 10, New York, NY 10017- 4605, web site at www.adr.org, phone 800-778-7879; or National Arbitration Forum P.O. Box 50191 Minneapolis, MN 55405, web site at www.arbitration-forum.com, phone 800-474-2371

The following replaces the last sentence of the section entitled **Administrative Fees:**

We may charge, for any services listed above and other services we provide, the fees from time to time in effect when we offer the service.

The following replaces the last sentence of **Checks** portion of the section entitled **Types of Transactions:**

Cash advance checks are treated as cash advances and balance transfer checks are treated as balance transfers except as noted in this agreement or any offer we make to you. We may treat checks that we call convenience checks as balance transfer checks. However, checks that we call convenience checks and that we indicated to you are subject to the terms for cash advances, may be treated as cash advances and assessed cash advance rates and fees.

ADV2264
Portfolio
0205_Portfolio
Cell #: ?
Chase
Creative Pkg:Feb 05 Chase Re
Mail Date:?

Last Edit Time: 1/13/05; 4:45:25 PM
Current Time: 1/13/05; 4:45:28 PM
User name: sysman3*

Page width: 10.375 in
Page height: 7.000 in
Fonts:ZurichBT-RomanCondensed
ZurichBT-BoldCondensed
Times-Roman

Colors on this page/spread:
Black

Important: Colors will not be listed accurately if images are missing.

Images:

Regular Mail & Certified Mail#: 7004 2890 0000 2766 5132

Chase Manhattan Bank
P.O. BOX 15299
Wilmington, DE  19850-5299

WORK OF

SEP 3 0 2005

September 26, 2005

CFD-DE 233

RE: Billing Error on Account # 4266812133912070
Amount in Dispute: $11,548.33

Dear Chase Manhattan Bank:

I am writing regarding the above account. I believe that my most recent statement, September 11, 2005 is inaccurate.

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated September 11, 2005. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated September 11, 2005. They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I list above. I am making this billing inquiry since I am uncertain of all the dates of the prepaid credits and also since there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing.

I am requesting that you provide me with an acknowledgement of this billing error and complete a full investigation by sending me a written explanation report related to the subject matter of this billing error.

I am also requesting additional documentary evidence of indebtedness of the account showing that you did not accept any note or similar instrument from me without properly crediting my account as agreed, which includes copies of the account entries that made you arrive at the recent balance shown on my statement.

I may exercise my right to withhold the disputed amount until you comply. Thank you for your time and consideration in this matter. If you have any questions please contact me immediately at the address below, but make sure your questions reference an acknowledgement to this billing error dispute.

Lastly, please remove my phone number 415-831-4485 from your solicitation list as I do not wish to do any business with Chase Manhattan Bank over the phone. I am requesting that all communications be conducted in writing, and I appreciate your honoring my request.

Sincerely,

Martha Carmack
1536-D Pershing Drive
San Francisco, CA  94129

**EXHIBIT G**

IN THE
NATIONAL ARBITRATION FORUM

---

CLAIM

---

Chase Bank USA, N.A.,
C/O Mann Bracken, LLC
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA

**CLAIMANT,**

RE:  Chase Bank USA, N.A. v Martha Carmack
**Forum File Number:**  FA0609000798680
**Account No.:**  5222763110716176

Martha Carmack,

1536 PERSHING DR APT D

SAN FRANCISCO, CA 94129

USA

**RESPONDENT(S)**

---

**RESPONDENT(S): THIS IS AN ARBITRATION CLAIM AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT WITH A WRITTEN RESPONSE. IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE NATIONAL ARBITRATION FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU.**

COMES NOW, Claimant, Chase Bank USA, N.A. (hereinafter, "Claimant"), and states its claim against Respondent and shows this honorable Forum the following:

1. Respondent is in breach of the Credit Card Cardmember Agreement, (hereinafter, "Agreement"), to which Claimant succeeds as Obligee following the transfer of all equitable and legal right, title and interest therein from the original Obligee, Chase. The material provisions of the Agreement and amendments thereto are quoted below. Counsel for Claimant will provide exemplar agreements or amendments via email or regular mail upon request.

2. Respondent's breach arises from his/her failure to honor the payment terms of the Agreement. Revolving credit was extended to Respondent in reliance upon the terms of the Agreement. The debt, which is the subject of the instant Claim, arises from revolving credit extended to Respondent in the form of credit card account number 5222763110716176.

---

**EXHIBIT H**

3.  Respondent(s) continuing default under the terms of the Agreement has resulted in a present principal debt on account due and owing to Claimant in the amount of $12794.96, as reflected in the attached account summary, plus interest accrued through the date of filing in the total amount of $505.51. Interest continues to accrue upon the principal balance due at the rate of 10.25%. The foregoing interest rate is the pre-judgement legal rate of interest authorized by the state law governing the Agreement (as quoted immediately below), to wit, the law of the State of Delaware:

**GOVERNING LAW:** This Agreement is governed by the laws of the United States of America and the State of Delaware. Any dispute concerning any item in this Agreement will be resolved by those laws.

Submitted for the convenience of the tribunal is a true and correct copy of the relevant statute, 6 Del. C. § 2301, appended hereto as Exhibit "A".

4.  This account was declared as a bad debt on 2006-04-30 at which point it was 210 days delinquent. The date of the last payment received on the account was 2005-09-06. Despite repeated attempts by Claimant and claimant's counsel and/or agents to resolve this claim short of resort to the remedy sought herein, Respondent(s) has/have not paid the amounts due or otherwise made provision for an accord and satisfaction of the claim at bar.

5.  Claimant proceeds herein pursuant to the following provision of the Agreement, as amended:

**ARBITRATION AGREEMENT**
IT IS IMPORTATNT THAT YOU READ THIS AGREEMENT CAREFULLY. IT PROVIDES THAT YOU MAY BE REQUIRED TO SETTLE A CLAIM OR DISPUTE THAT IS COVERED BY THIS ARBITRATION AGREEMENT THROUGH ARBITRATION, EVEN IF YOU WOULD PREFER TO LITIGATE THE CLAIM IN A COURT. YOU ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE SUCH CLAIMS IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION LAWSUIT OR OTHER REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION, MAY NOT BE AVAILABLE IN ARBITRATION OR MAY BE MORE LIMITED. CERTAIN CLAIMS BY EITHER OF US AGAINST THE OTHER SEEKING UP TO $25,000, EXCLUDING INTEREST COSTS AND FEES, MAY BE RESOLVED BY LITIGATION AND NOT ARBITRATION.

Binding Arbitration: This Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1-16 as it may be amended. This Arbitration Agreement sets forth the circumstances and procedures under which claims (as defined below) may be resolved by arbitration instead of being litigated in court.

Claims Covered. Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employees, agents, or assigns of the other arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief.

Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning. Notwithstanding the foregoing, a Claim may be resolved by litigation and it not subject to arbitration under this Arbitration Agreement if (1) the only remedy that will be sought by either of the parties is monetary damages; (2) neither party will be seek recovery in excess of $25,000, excluding interest, costs and fees; and (3) the only parties to the litigation will be you and us. If one party wants a Claim to be resolved by arbitration, but the other party believes the Claim may be litigated subject to this small claims exception, the party seeking arbitration may require reasonable assurance from the other party that the conditions are true and that the party wishing to resolve the Claim by litigation will take no action now or in the future to change the nature of the Claim so that it would no longer meet the conditions of this small claims exception. If such reasonable assurance is not provided, the party seeking such assurance may require the Claim to be resolved by arbitration.

As used in this Arbitration Agreement, the term "Claims" includes claims that arose in the past, or arise in the present or the future. If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action. The only Claims that may be joined in an individual action under this Arbitration Agreement are (1) those brought by us against you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy or (2) those brought by you and any co-applicant, joint cardmember, or authorized user of your Account, or your heirs or your trustee in bankruptcy against us. This means that even if a class action lawsuit or other representative action, such as those in the form of a private attorney general action, is filed, any Claim between us related to the issues raised in such lawsuits will be subject to arbitration if you or we so elect. Claims subject to arbitration include Claims that are made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

For the purpose of this Arbitration Agreement, "we" and "us" means Chase Manhattan Bank USA, N.A., its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your Account, and all of their officers, directors, employees, agents, and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the Account (including but not limited to credit bureaus, merchants that accept any credit device issued under the Account, rewards programs and enrollment services, credit insurance companies, debt collectors, and all of their officers, directors, employees, agents and representatives) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

Initiation of Arbitration. The party filing an arbitration must choose one of the following three arbitration administrators: American Arbitration Association; JAMS; or National Arbitration Forum. However, if we elect an administrator, you will have ten days after receiving notice of our election to request that the arbitration be conducted pursuant to rules of one of the other two arbitration administrators. To exercise your choice, you must notify us of your choice by writing us at P.O. Box 15933, Wilmington, DE 19850-5933. Send us a copy of the notice you received and state which of the other two arbitration administrators you choose. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected administrator by an impartial third party chosen in accordance with this Arbitration Agreement and rules of the selected administrator. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administrator within the federal judicial district in which you reside at the time the Claim is filed, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration administrators, information about arbitration and arbitration fees, and instructions for, initiating arbitration by contacting the arbitration administrators:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org, 800-778-7879

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610
Web site: www.jamsadr.com
800-352-5267

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com
800-474-2371

Procedures and law applicable in arbitration. A single, neutral arbitrator will resolve Claims. The arbitrator will either be a lawyer with at least ten years experience or a retired or former judge. The arbitrator will be selected in accordance with the rules of the arbitration administrator. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator that are in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Arbitration Agreement, in which case this Agreement will prevail. These procedures and rules may limit the amount of discovery available to you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law. You may choose to have a hearing and be represented by counsel. The arbitrator will take reasonable steps to protect customer Account information and other confidential information, including the use of protective orders to prohibit disclosure outside the arbitration, if requested to do so by you or us. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against, or for the benefit of any person who is not a party to the proceeding. The arbitrator may award punitive damages or attorney fees, if such damages are authorized by law. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Upon request by you or us, the arbitrator will provide a brief statement of the reasons for the award.

Costs. At your written request, we will advance any reasonable arbitration filing fee, or administrative and hearing fees that you are required to pay to pursue a Claim in arbitration up to the amount of $500. We will reimburse you for the initial fee if you paid it and you prevail on your Claim. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. However, we will advance or reimburse filing fees and other fees if the arbitration administrator or arbitrator determines there is good reason for requiring us to do so or you ask us and we determine there is good cause for doing so. Each party will bear the expense of the fees and costs of that party's attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails, for arbitration and any appeal (as permitted below), except that the arbitrator shall apply any applicable law in determining whether a party should recover any and all fees and costs from another party.

Enforcement, finality, appeals. You or we may bring an action including a summary or expedited motion to compel arbitration of Claims subject to arbitration, or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such

action may be brought at any time, even if any such Claims are part of a lawsuit. Failure or forbearance to enforce this Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims. Any additional or different agreement between you and us regarding arbitration must be in writing. The arbitrator's decision will be final and binding, except for any right of appeal under FAA. In addition, the non-prevailing party may appeal any award that exceeds $100,000 or that includes an award of punitive damages. Any request for an appeal must be filed in writing with the same arbitration administrator within 30 days of the receipt by the non-prevailing party of notice of the original award. The appeal shall be heard before a panel of three neutral arbitrators designated by the same arbitration administrator. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the majority vote. The cost of the appeal imposed by the arbitration administrator shall be borne by the appealing party. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

Severability, survival. This Arbitration Agreement shall survive: (i) termination or changes in the Cardmember Agreement, the Account and the relationship between you and us concerning the Account, such as the issuing of a new account number or the transferring of the balance in the Account to another account; (ii) the bankruptcy of any party and (iii) any transfer, sale, or assignment of your Account, or any amounts owed on your Account, to any other person. If any portion of this Arbitration Agreement is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force.

6.  Submitted for the convenience of the tribunal are true and correct copies of the relevant statutes, to wit, 10 Del. C. § 3912, appended hereto as Exhibit "B" and 5 Del. C. § 951, appended hereto as Exhibit "C".

- Attorney's Fees;
- Costs of Arbitration: (i) A Filing Fee of $35 already incurred by Claimant; (ii) a Commencement Fee as may be incurred; (iii) any Administrative Fees as may be incurred; (iv) any other or further Fees as may be incurred in the course of these proceedings;
- Expenses incurred by the Claimant in serving the Respondent with this Claim.

WHEREFORE, Claimant respectfully requests the issuance of an AWARD in its favor as follows:

- In the amount of $12794.96 for the principal amount of debt due and owing from Respondent to Claimant;
- In the amount of $505.51 for interest accrued on said principal amount through the date of this filing;
- For prejudgment interest at the legal rate of 10.25% from the date of this filing through the issuance of Award;
- Attorney's Fees of $1279.5;
- All costs of Arbitration as may be incurred by Claimant in the course of these proceedings;
- Service expenses as incurred in serving this Claim upon Respondent;
- Any other or further relief that this honorable Forum deems appropriate.

The undersigned asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are true and correct.

RESPONDENT(S) MUST SEND A WRITTEN RESPONSE TO THE NATIONAL ARBITRATION FORUM, WITH A COPY TO THE CLAIMANT, WITHIN 30 DAYS OR AN AWARD MAY BE ENTERED IN FAVOR OF THE CLAIMANT.

_____

James D. Branton, Esq.
for the Claimant


Claimant Contact:
Mann Bracken, LLC
Attention: James D. Branton, Esq.
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
1-800-817-3214
arbitration@mannbracken.com

*DAA 60-68963-0*

### IN THE NATIONAL ARBITRATION FORUM

Martha Carmack
1536 Pershing Drive, Apt. D
San Francisco, CA 94129

**RESPONDENT,**

Bank One
Mann Bracken, LLC
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339

**CLAIMANT.**
cc National Arbitration Forum

**NOTICE OF OBJECTION TO
ARBITRATION
RULE 13A(2)**
Forum File Number:  FA0606000727265
Account Number:  4266812133912070
Date: July 25, 2006

**RECEIVED**

AUG 0 3 2006

MANN BRACKEN ARBITRATION

I, Martha Carmack, Respondent, hereby declare and state that this is a Notice of Objection to Arbitration pursuant to RULE 13A(2) of the National Arbitration Forum's, hereafter NAF Code of Procedure Dated July 1, 2002 and as stated in said rule establishes the fact that Respondent has clearly asserted the right to object as outline in said rule.  In addition Respondent provides the following statement of facts to support said Notice:

### STATEMENT OF FACTS

1.  That I never consented or agreed to any contract of adhesion containing a forum selection clause that would subject me to the jurisdiction of the National Arbitration Forum, or any other Arbitration forum;

2.  That this Notice of Objection to Arbitration should not be construed as a submittal to Arbitration proceeding in any way whatsoever.  This is only a good faith effort to resolve this matter in an expeditious fashion and is only intended to stipulate that I object to any such arbitration proceeding;

3.  That the NAF would be acting illegally and without jurisdiction by ordering or requesting any further documentation regarding this matter or proceeding with any type of hearing regarding this claim;

4.  That the Forum's requirement of the Respondent to participate in any way in this forum in order to resolve a dispute, and failure by the Respondent to appear may result in an award against him is done in violation of my rights by attempting to deny me meaningful access to due process and is done without any authority;

5.  That I discharge and prohibit the Forum from making any award or taking any other action whatsoever, except to dismiss the case for lack of jurisdiction.

6.  That I will not respond to any further communications regarding this Arbitration Claim.

7.  That I am not in receipt of any documentation stipulating that I am required to arbitrate.

8.  I, [your name] declare that the statements herein and above are true and correct to the best of my personal knowledge.

**EXHIBIT I**

## POINTS AND AUTHORITIES

### STATEMENT OF CASE

9. Claimant has filed a claim in the National Arbitration Forum, (hereafter NAF) in regards to a dispute regardi a credit card account between Claimant and Respondent.  Respondent is opposing Claimant's request pursua to Rule 13A(2) NAF Code of Procedure on the following grounds:

   a.  There was never any arbitration agreement between Plaintiff and Defendant, and therefore any appointed arbitrator would be without authority and jurisdiction to establish any enforceable award. *(Rule 1 NAF Code of Procedure et esq.)*

   b.  Claimant has failed to provide a copy of the referenced contract of adhesion or the location of such document and provide any proof that I was given the right to reject the terms without impunity.

   c.  Claimant has failed to provide a copy of the Arbitration Agreement containing any authorizing signatures that would substantiate a valid binding contract or notice of the location of a copy of said agreement. *(RULE 12(A2) NAF Code of Procedure).*  It is the respondent's belief that this was intentional on the part of the Claimant as Respondent is not aware of the existence of any such document.

   d.  Respondent is aware that most states have enacted legislation in support of Alternant Dispute Resolut (ADR) as a method of resolving matters of disagreement and as an alternative to court proceedings. However this in no way subjects Respondent to any the jurisdiction of this or any other forum withou the existence of such an agreement or a court order compelling mandatory arbitration as a solution to this matter.

   e.  Respondent has reason to believe that any Arbitration award that may be granted would be void on it: face without first establishing jurisdiction by way of the above referenced agreement and full compliance with the rules set forth by the NAF governing the arbitration process.

### LAW AND ARGUMENT
### NO VALID AGREEMENT TO ARBITRATE

10. Further, under the first step in analysis to decide whether a dispute must be arbitrated under the Federal Arbitration Act (FAA), a party may challenge the validity of an arbitration agreement under general contract principles. 9 U.S.C.A. Sec.1 et seq.; *In Re David's Supermarkets, Inc.* 43 S.W.3d 94 (2001).  In addition, the federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound. 9 U.S.C.A Sec. 1 et seq.; *Fleetwood Enterprises, Inc. v. Gaskamp,*  280 F.3d 1069, opinion supplemental on denial of rehearing 303 F.3d 453.

11. Claimant claims that there was an alleged agreement to arbitrate, to be governed by provisions under the FAA. Even under the FAA, there must be evidence of a valid agreement. Courts are clear in upholding an agreement to arbitrate must be clear to both parties. Otherwise, the legislative intent of arbitration is abused and devalued. In *Stout v. Byrider*, 50 F.Supp.2d 733, affirmed 228 F.3d 709, the court held that arbitration is a matter of contract, and thus, a party cannot be compelled to arbitrate any claims he or she did not agree to arbitrate when making the contract. In the case at hand, Respondent never agreed to arbitration. Respondent never received any agreement or contract, or information ·regarding an arbitration clause.

12. The Federal Arbitration Act, 9 U.S.C.A., provides that the purpose of arbitration is to give arbitration agreements the same force and effect as other contracts, where parties expressly agree to submit to disputes to arbitration. *Brener v. Becker Paribas Inc.*, S.D. N.Y 1985, 628 F.Supp. 442. Further, there must be a clear agreement to arbitrate. *Nicholas A. Califano, M.D., Inc. v. Shearson Lehman Bros. Inc.*, S.D.N.Y. 1988, 690 F.Supp. 1354. In the case at hand, Respondent did not receive notice or agreement to arbitrate, nor did Respondent ever expressly agree to arbitration.

13. No arbitration agreement exists between Claimant and Respondent whatsoever, and none of Respondent's arguments should be construed to mean that such agreement exists. Respondent was never given clear notice of arbitration in any original agreement, nor was made aware of any arbitration agreement, nor expressly agree to arbitration, nor establish meaningful consent to arbitrate.

## NO JURISDICTION UNDER THE FAA

14. "Federal law preempts state law on issues of arbitrability." *Three Valleys Mun. Water Dist. v. E.F. Hutton* (9th Cir. 1991) 925 F.2d 1136, 1139. "...a party who contests the making of a contract containing an arbitration provision cannot be compelled to arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make that decision." *Three Valleys Mun. Water Dist. v. E.F. Hutton*, at 1140/1141.

15. 9 USC Sec. 2 requires a written agreement to arbitrate. The requirement is jurisdictional. Without a written agreement, the FAA does not apply. Further, there is no requirement under the FAA mandating that the jurisdictional defense of "no agreement to arbitrate" be raised within a particular period of time.

16. WHEREFORE, there is no consent or agreement on the part of Respondent to arbitrate, Respondent respectfully demands that this proceeding be stopped immediately an no additional correspondence regarding this matter be requested.

Respectfully Submitted Without Prejudice

MARTHA CARMACK

Jun 20 2007  12:32    P.25

**Exh.bit "B"**

NATIONAL ARBITRATION
# FORUM

*A FORUM Dispute Management Organization*

6176
Award

January 04, 2007

Martha Carmack
1536 Pershing Dr Apt D
San Francisco, CA  94129

Chase Bank USA, N.A.
c/o Mann Bracken, LLC
James D. Branton, Esq.
2727 Paces Ferry Road
One Paces West, 14th Floor
Atlanta, GA  30339

RE:  **Chase Bank USA, N.A. v Martha Carmack**
File Number:  FA0609000798680
Claimant Reference Number:     60697470

Dear Parties:

Enclosed and served upon you by United States Mail is a copy of the **Award**, which has been
entered in this matter.

This case is now closed with the National Arbitration Forum.  All future inquiries regarding this
case should be directed to the opposing Party.

Sincerely,

*Jill Surine*

Jill H Surine
Case Coordinator
Enclosure

**EXHIBIT J**



NATIONAL ARBITRATION
# FORUM

6176

Chase Bank USA, N.A.
c/o Mann Bracken, LLC
2727 Paces Ferry Road
One Paces West, 14th Floor
Atlanta, GA 30339

**CLAIMANT(s),**

RE:

**AWARD**

Chase Bank USA, N.A. v Martha Carmack
File Number: FA0609000798680
Claimant Account Number: 5222763110716176

Martha Carmack
1536 Pershing Dr Apt D
San Francisco, CA 94129

**RESPONDENT(s).**

The undersigned Arbitrator in this case FINDS and CONCLUDES:

## Case Summary

1. The Claimant has filed a Claim with the National Arbitration Forum.
2. After Proof of Service of the Claim was filed with the Forum, where no Response has been filed, the Forum mailed to Respondent a Second Notice of Arbitration.
3. The Respondent filed a Response with the Forum that was deficient pursuant to Rule 6 of the Code of Procedure.
4. An arbitration hearing notice was duly delivered to the Parties as required by the Forum Rules.
5. The Parties have had the opportunity to present all evidence and information to the Arbitrator.
6. The Arbitrator has reviewed all evidence submitted in this case

## Decision

1. The Arbitrator knows of no conflict of interests that exist.
2. This matter involves interstate commerce and the Federal Arbitration Act governs this arbitration.
3. The Claim was properly served on the Respondent by Claimant in accordance with Rule 6, including a Notice of Arbitration.
4. On or before 09/18/2006 the Parties entered into a written agreement to arbitrate their dispute.
5. The Parties' Arbitration Agreement is valid and enforceable and governs all the issues in dispute.
6. This matter is arbitrable under the terms of the Parties' Arbitration Agreement and the law.
7. The matter has proceeded in accord with the applicable Forum Code of Procedure Rules.
8. The evidence submitted supports the issuance of this Award.
9. The applicable substantive law supports the issuance of this Award.

Therefore, the Arbitrator ISSUES:

An Award in favor of the Claimant, for a total amount of $15,012.57.

Entered and Affirmed in the State of California

Ronald H. Kahn, Esq.
Arbitrator

Date: 01/03/2007

**ACKNOWLEDGEMENT AND CERTIFICATE
OF SERVICE**

This Award was duly entered and the Forum hereby certifies that pursuant to the Parties' Arbitration Agreement, a copy of this Award was sent by first class mail postage prepaid to the Parties at the above referenced addresses, or their Representatives, on this date.

Honorable Harold Fedina, Ret.
Director

Date: 01/03/2007