# The Number One Alternative to Bankruptcy and Consolidation for Unsecured Credit Card Debt!

### CONGRATULATIONS!



You have just found the way to eliminate Major Credit Card Debt and Unsecured Debt. With Debt Elimination Program you can legally stop making payments...
IMMEDIATELY!!!

## OUR PROGRAM

- Is **Not Bankruptcy!**
- Is **Not Consolidation!**
- Is **Not a Loan!**
- Can **pay for itself** immediately.
- Eliminate your total debt 75% or more <u>guaranteed</u>!
- Become **DEBT FREE** in 12 to 18 months.
- Credit repair.
- Available for US residents.
- **Stop** creditor harassments.
- **Don't fear** the phone calls.
- **Learn** your rights

Within this site you can learn <u>"How This Program Works"</u>, <u>"What Can It Do For You?"</u> and "How Can Achieve Freedom From Debt".

Go ahead a take a few minutes and have a look - you <u>owe</u> it to yourself!

For a quick, free and friendly no pressure consultation, contact Jerri <u>here</u>.

Click here to go straight to the contact form!



LIFE BEYOND DEBT HOME                                      Page 2 of 2

---

Site Hosted by JERRI QUINN



Representing the program created by NAES/DRES
(North American Educational Services/Debt Relief Educational Services)

© 2006 Jerri Quinn

Debt Relief Educational Servir

Page 1 of 2



HOME | OUR PROGRAM | FAQ | TESTIMONIALS | CREDIT CALCULATOR | ADDITIONAL EDUCATION | CONTACT

# Reduce Your Debt by 75% or More Today
## and Stop Making Payments Immediately

✓ Reduce Your Debt by 75% or More.

✓ No Monthly Payments.

✓ Avoid Bankruptcy.

✓ No Credit Checks.

✓ Home Ownership not Required.

✓ Regain Financial Control.

✓ Get Out of Debt in 36 Months or Less.

✓ Stop Making Payments Immediately.

✓ Receive the Best Back End Support Around.

First Name:

Last Nar

City:

State:

Day Phone:

Evening Ph

Email Address:

Email Veri

Contact Time:
Best Time To Call ▼

Total Amo
Unsecured
(minimum $,

Referred By:

Amount of De

After clicking, if page does not refresh,
required fields above indicated by

Make Me Debt Free!

---

HOME | OUR PROGRAM | FAQ | TESTIMONIALS | CREDIT CALCULATOR | ADDITIONAL EDUCATION | CONTACT

**SETTLEMENT**

Today, a very intelligent and effective way to reduce or eliminate personal debt is through negotiation and debt settlement. When you hire us, we negotiate with your creditors to settle your outstanding balance by eliminating 40-60% or more of your debt. This innovative approach to debt reduction makes sound financial sense when facing the overwhelming burden of regaining control of high credit card or other balances. [More]

**TAKE BACK YOUR CREDIT**

The financial services industry is a trillion dollar industry. Experts state that a significant number of consumers have some type of inaccuracy on their credit reports. Inaccuracies can mean paying higher interest rates on credit cards, mortgages, and car loans.

**TESTIMONIALS**

I used to pay out $120 credit card debt betw cards. 9 months late more credit card debt! left me alone and ever been able to atter Solutions Seminars, ar knowledge I've learne my taxes and protect [More]

Debt Relief Educational Servi    Page 2 of 2

| | [More] | |
|---|---|---|

®Copyright 2004 Debt Relief Educational Services, *Powered by Dynamic Solutions*



NORTH AMERICAN EDUCATIONAL SERVICES
A NEVADA CORPORATION DOING BUSINESS AS DRES



Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

## NEWS ARTICLES & PUBLICATIONS



Some of today's most common personal-finance decisions also happen to be some of the most destructive.

Learn More

View other
News Articles

### Debt Relief Educational Services

Over the past several years, Debt Relief Educational Services (DRES) has been servicing individuals who have unsecured debt (primarily credit card debt). DRES accomplishes this by providing powerful choices to our members. These choices provide them with the best alternative solution to bankruptcy, consolidation, and other remedies that have been proven to be detrimental to their financial situation.

[More]

### Six Figures to Success

If You Are Serious About Starting A Business Of Your Own, And Consider Yourself a Responsible and Professional Individual, NAES May Be What You Have Been Looking For.

At NAES, We Work With Entrepreneurs That Believe In Healthy Business Relationships, As Well Those That Take Pride In Personal Responsibility And Accountability.

[More]

Login Area

Login:
Password:
                                    Si

Forgot Login or Passwo
Tools and Calculator
**Credit Card Payment Calcul**

(C) 2004 - 2006 North American Educational Services, All Rights Reserved

NAES - North American Educ    nal Services



NORTH AMERICAN EDUCATIONAL SERVICES



Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

## Debt Relief Educational Services

Over the past several years, Debt Relief Educational Services (DRES) has been servicing individuals who have unsecured debt (primar credit card debt). DRES accomplishes this by providing powerful choices to our members. These choices provide them with the best alternative solution to bankruptcy, consolidation, and other remedies that have been proven to be detrimental to their financial situation. date, DRES has helped thousands of people obtain significant debt relief and restore an incredible amount of freedom back in to their li

The procedures that allow DRES to accomplish its objectives have been working successfully for over five years now.

The staff at DRES includes: Former bank compliance division experts and Resource and Financial Education Specialists who have pers experience in utilizing these procedures from start to finish. These procedures include consumer remedies based on 12 C.F.R. (Code o Federal Regulations), the Fair Credit Billing Act, which is taken from Title 15 of the U.S.C. (United States Code) and other applicable fed laws. Additionally, for people with credit concern issues, DRES provides an educational tutorial based on consumer protection laws as v a partnership with the nations leading credit repair organization.

DRES takes a cutting edge approach into an industry which is greatly untapped. There are millions of americans who suffer from havin( much unhealthy debt in their lives. DRES offers an opportunity for people to recapture an enormous part of their personal and financial freedom by eliminating this condition.

To begin your journey for complete financial independence, immediately get back to the DSI Agent who referred you to this information contact our marketing director at marketing@naes.cc.

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti





Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

**Coming Soon!!**

Contact your agent for details.

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti

NAES - North American Educ ... onal Services - TBYC

NAES - North American Educ ⸻nal Services - Six Figures to Success                Page 1 of 2





Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

### Six Figures to Success

If You Are Serious About Starting A Business Of Your Own, And Consider Yourself a Responsible and Professional Individual, NAES M What You Have Been Looking For.

At NAES, We Work With Entrepreneurs That Believe In Healthy Business Relationships, As Well Those That Take Pride In Personal Responsibility And Accountability.

Our Clients Receive Outstanding Service And Are Armed With The Knowledge That We "Under Promise And Over Deliver" In All Of Ou Dealings With Them. Our Agents Are Self Starters And Have Access To The Best Training In The Industry. This Insures That Our Clien Always Our Number One Priority.

NAES Agents Have Access To The Most Life-Changing, Cutting-Edge Strategies In Existence For Both Wealth And Health, And Are Empowered By The Fact That These Strategies Are Extremely High In Demand By Individuals And Their Families.... Now More Than E People Are Searching For A New Beginning...A Fresh Start That Can Give Them The Lifestyle That They Know Is Possible, But That Currently Seems Out Of Their Reach.

NAES Delivers These Solutions, And Through The Marketing Of These Powerful Strategies, Our Agents Are Able To Secure Their Own Financial Future With A Business Model That Has No Competition.

If You Are Serious About A Long-Term Business Relationship, Please Speak With The Person That Directed You To This Web Site For Information, Or Send An Email To Our Attention At : marketing@naes.cc

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti



NORTH AMERICAN EDUCATIONAL SERVICES
A NEVADA CORPORATION DOING BUSINESS AS DRFS



Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

**In the News!!**
Click here for more news

### The 3 worst money moves you can make
Some of today's most common personal-finance decisions also happen to be some of the most destructive.
Here are the primary pitfalls -- and how to avoid them

By Liz Pulliam Weston of MSN Money Central

Sound financial advice doesn't change much from year to year. Bad money management ideas, however, seem to mutate and flourish with each passing season.

Borrowing against our home equity and retirement funds, for example, was once tough to do -- and generally understood as a bad idea. Today, financial services companies encourage us to do both. Lenders also urge us to stretch farther and farther to buy our homes, often to our peril.

Ultimately, it's up to you to resist bad advice and protect your own financial futures. Here's what you need to know about three of the most popular pieces of bad advice today:

**Use a home equity loan to pay off credit-card debt**
Lenders love to tout home equity loans and lines of credit as a way to pay off your plastic. You'll even see some personal finance journalists parroting the company line that such loans make sense, because home equity rates are typically lower than the interest rates you'd pay on your cards -- and the interest is usually tax deductible.

Americans have been taking this advice with a vengeance. We borrowed a total of $701.5 billion from our home equity as of the end of last year, according to the Federal Reserve, up from $416.2 billion in 1997. Low home equity rates, and stubbornly high credit-card rates, have convinced millions that this is the way to go.

The only way this maneuver really helps you, however, is if you stop using your credit cards to run up debt. Otherwise, you're just digging yourself a deeper hole.

Unfortunately, the ability to live within their means is beyond many people. Nearly two-thirds of the people who borrowed against their home equity between 1996 and 1998 to pay off credit cards had run up more card debt within two years, according to a study by Atlanta research firm Brittain Associates.

Oh, sure, you can borrow more against your home to pay off the new debt -- thus whittling away the amount of equity that's available to you in an emergency, and ensuring that you continue to pay hundreds or thousands of dollars a year in interest to your lender. The credit-card balances you should be paying off every month instead get stretched out for years, ultimately costing you more in interest -- even with the tax savings.

Financial planner Ross Levin of Minneapolis says home equity lending has its place -- as an emergency source of cash. He encourages clients to set up home equity lines of credit, which are revolving accounts that work much like credit cards with variable interest rates, in case they lose their jobs or need quick cash to meet some other dire need. Many lenders

will set up home equity lines for you at no cost, and the annual fees are usually minimal.

But Levin, like other planners, is adamant about not tapping home equity to pay off credit cards or anything else that won't last as long as the debt.

"The people who need to do a debt consolidation (using home equity loans) tend to need to do it again and again and again," Levin said. These folks never learn to manage their money, and they put their homes at risk in the bargain. While unpaid credit-card debt can be erased in bankruptcy, the penalty for not making your home equity payments is losing your house.

If you've already borrowed against your home equity, pay off the debt as quickly as you can. If you haven't and think you need to, cut up your credit cards first. Don't use your home equity to pay for luxuries or for anything else that won't last as long as the loan.

Borrow from your 401(k)
Companies don't have to offer a loan feature with their 401(k) retirement plans, but according to the Employee Benefit Research Institute, most of them do. Eighty-three percent of American workers covered by 401(k) plans can borrow against their accounts, and about one in five participants had an outstanding loan in 2000. The average outstanding loan balance was $6,856.

Financial services companies have encouraged employers to make loans available, saying the ability to tap retirement funds will increase worker participation in the plans. The idea is that workers are more likely to contribute if they don't feel their money is being locked away.
People who borrow from their workplace retirement funds, meanwhile, love to think it's a smart move, since when they repay the loan they're essentially paying interest to themselves rather than to a credit-card company or other lender.

This is true, but 401(k) borrowers also could be putting their retirements at risk. If they lose their jobs or get fired, the loan must be repaid, typically within weeks. If that's not possible -- and often it's not, since people who lose their jobs don't tend to have a lot of cash sitting around -- the outstanding loan balance is taxed and penalized as a premature distribution.

So in addition to the $6,900 you borrowed to spend on whatever, you'll be coughing up thousands more for taxes and penalties.

It gets worse, since you can't put that money back. Whatever the $6,900 might have earned in future years is gone forever. Assuming an 8% return that could cost you more than $75,000 in future retirement funds.

Like home equity, retirement funds are best left alone to grow -- and to be there for you in case of real emergency.

Stretch to buy a house
Beware, homebuyers. Everyone around you is conspiring against your financial best interests.

Your real estate agent wants you to buy the most expensive house you can: the higher the price tag, the bigger her commission. Your lender is in cahoots, as well. Not only will a larger loan rack up more fees and interest, but also the lender knows you'll move heaven and earth to pay your mortgage even when you're falling behind on other bills.

Your friends and family also may get into the act, telling you it's okay to stretch to pay that mortgage, since your income will eventually rise and make the payments more comfortable.

Maybe, maybe not. But anyone who's been house-poor knows the emotional, psychological and financial stress of stretching too far.
"You never want to buy as much house as lenders are willing to lend you," declares Delia Fernandez, a Long Beach, Calif. financial planner who specializes in middle-income clients. "Some people think they're willing to sacrifice to live in their dream home, but they should think long and hard about what that really means."

Buying too much house could mean giving up other things you want: vacations, eating out, a college fund for your kids, a sufficient retirement kitty. Or it could mean ever more debt, as you borrow to try to maintain your lifestyle.

Fernandez has had clients who overextended to buy a house, ran up $50,000 in debt on a home equity line of credit and then had trouble making even the minimum payments on their loans. Now any new purchase is a struggle.

"Sometimes they can't stay in the house, or they let maintenance and repairs go, which doesn't do them any good" since the value of their house declines with deferred maintenance, Fernandez said.

Traditionally, lenders limited the amount you could borrow so that your housing costs --principal, interest, taxes and insurance, or PITI -- equaled 26% to 28% of your total pretax income. Lenders today, however, are often willing to go to 33% or even higher, said mortgage broker Allen Bond.

Bond, president of the California Association of Mortgage Lender's Southern California chapter, has seen lenders approve mortgages that eat up 50% to 60% of the borrower's income.

Mortgage payments, of course, are just part of the costs of owning a house. Homeowners should plan on spending at least 1% of their homes' value each year on maintenance and repairs, according to Eric Tyson, author of "Home Buying for Dummies." Include other costs, such as bigger utility bills, homeowners' association dues and decorating, and the typical homeowner could spend an amount equal to the monthly mortgage payment on such upkeep.

That's why Fernandez recommends her clients limit their PITI to 25% of their total income.

"That's the most comfortable level for most people," she says.

If you're set on buying your dream house, figure out how much more you'll be paying each month for your new home -- and start living now as if you were already shelling out that amount. If you can pull this off comfortably for six months or more, then you can proceed with some confidence. In the meantime, Fernandez said, you can save the difference between what you're spending now and what you'll be spending in the future -- thus bolstering your emergency fund and giving yourself an even larger comfort zone.

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti

NAES - North American Educational Services - In the News                                    Page 1 of 3





Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

## In the News!

**New Bankruptcy Law**
After 7 failed attempts and massive lobbying largely by banks and credit card companies, the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 (S.256) was signed into law by President Bush on April 20th, 2005.
Most provisions of the law are effective Oct 17th, 2005. Click here for a summary and click here for the full text of the act.

**Higher monthly payments for everyone**
Under new federal guidelines, almost everyone who is carrying a credit card balance can expect higher minimum
payments before the end of the year.

**One late payment can doom you.**
Credit card companies and insurers are looking for reasons to increase rates. A single late payment charge could ripple through all
your unrelated accounts.

Mind those bills. All of them. A late payment on one account could cost you higher rates and fees on all your accounts -- from your
credit cards to your auto insurance. More and more companies are peeking at credit reports regularly to justify raising interest rates
increasing credit limits.

**The 3 worst money moves you can make**
Some of today's most common personal-finance decisions also happen to be some of the most destructive. Here are the primary
pitfalls -- and how to avoid them

Sound financial advice doesn't change much from year to year. Bad money management ideas, however, seem to mutate and flouri
with each passing season.

**West Virginia Sues Pennsylvania Credit-Card Issuer over Debt-Collection Tactics**
West Virginia's attorney general has sued Cross Country Bank and its Delaware County collection arm, alleging that its debt collectc
violated West Virginia law "on a scale rarely seen."

The lawsuit, filed March 17, is the fourth pending against Cross Country, a Wilmington credit-card issuer, and the collection firm,
Applied Credit Systems Inc., of Glen Mills. New York, Minnesota and Wisconsin filed lawsuits last year.

**Consumer Debt More Than Doubles in Decade**
As the bills from holiday spending sprees arrive, Americans are finding that the mountain of debt they've built has gotten even highe

Consumer debt has more than doubled in the past 10 years to record levels, making it hard for many families to cope.

For Bruce and Lorraine Esbensen of Clifton Heights, Pa., trouble started when they spent lavishly on their wedding six years ago. T soon found themselves falling behind on their bills.

---

**Credit Counselors Hurt Consumers**
Consumers drowning in credit-card debt increasingly are being victimized by poor service, hidden charges and high fees charged some credit counseling agencies that often leave them even deeper in debt, Senate investigators have found.

Consumer complaints are on the rise as new companies come into the counseling business and abuses proliferate, according report released Wednesday by the bipartisan investigative panel of the Senate Governmental Affairs Committee. The investiga found a pattern of abuse among some counseling agencies, especially new entrants to the field.

**Barclays making vast profits from fear of debt**
Barclays, the high street bank whose chief executive Matt Barrett was forced to admit before Christmas that he would never dream running up debts on his credit card, is making vast and hitherto undisclosed profits selling debt-related insurance to 2 mil customers, a Guardian investigation shows.

According to internal bank documents, about 10% of Barclay's worldwide profits have come from selling so-called payment protec insurance on Barclayloans, Barclaycard and Woolwich mortgages. The insurance covers customers who may be unable to keep payments on their mortgages, loans and credit cards if they are made redundant or fall sick, but successful claims on these policies customers are quite rare.

**Generation Debt**
From this side of the Pacific, we've always shuddered at the prospects for young people in a place like Japan. The routine of archety *sarariman*, or corporate drone, sure sounds dreadful: a drab college education followed by a youth of low-paid toil, long commutes Tokyo, and little chance for advancement beyond middle management. The very best a sarariman can hope for, we're led to believe to someday go into hock for a suburban condo and to scrape together enough money so the kids can attend after-school c sessions.

**Most millionaires save, not earn, their way to riches**
How much you make is not as important as how much you save.

You could call that the millionaire maxim.

James Trippon, a Houston money manager and certified public accountant, says many of the nation's 7 million millionaires saved t way to wealth — and lots of them don't even realize they did it.

**Retiring debt**
Several recent studies suggest that senior citizens in this country are not as well off financially as many thought.

The World War II generation of savers and homeowners now has more debt, is declaring bankruptcy more frequently and is handing down the big transfer of wealth to their children that many suggested a few years ago.

**Simple living yields simply millions in savings**
Many people already lead simple-living lifestyles and don't know it. And many of them are millionaires. Proof can be found in the b selling book, "The Millionaire Next Door," by Thomas Stanley and William Danko. You'd never guess that the subject of milliona could have anything to do with simple living, but it does.

**Beef up your credit score in 5 steps**
So you've had a few problems getting the bills paid lately, and you're wondering what you can do to repair the damage.

You've got plenty of company. There are more than 30 million people in the United States with credit blemishes severe enough (sc under 620) to make obtaining loans and credit cards with reasonable terms difficult

NAES - North American Educational Services - In the News                    Page 3 of 3

Debt consolidation: cure or continued credit problems?
Interest rates haven't been this low for decades, tempting some consumers to take on additional debt to ease existing credit woes.
goal is to consolidate various higher-interest balances into one, easier-to-handle and less-costly package.

But be careful of what looks to be a quick fix.

"You're getting symptomatic relief, not a credit cure," says Chris Viale, general manager of Cambridge Credit Corp., a nonprofit cr
counseling agency based in Agawam, Mass.

20 sneaky credit card tricks
Credit card companies can be as slippery as a handful of greased Jell-O. They have all kinds of tricks to gouge your wallet and drive
your bill. While arguably unfair, all these tricks are legal, leaving you no alternative but to stay as informed as possible to pro
yourself.

Read your statement, report any irregularities immediately and watch for these 20 sneaky credit card company tricks.

Debt help that isn't
Asking for help when you have too much debt and not enough money isn't easy.

But if you trust the wrong company, getting help could be downright dangerous to your wallet and your credit rating.

A slew of credit-counseling and debt-consolidation companies looking to make a quick buck by preying on stressed-out, financially
vulnerable consumers have opened shop. Some companies are guilty of shoddy service and sky-high fees. Others are out-and-out
scams.

Growing profit source for banks: Fees from riskiest card holders
When Jennifer Reid opened her credit-card statement in April, she discovered how expensive it was to make full use of her credit.

The 42-year-old X-ray technologist had run through $10,000 of her $12,000 credit line on an MBNA Corp. card. In April, her ann
interest rate abruptly jumped to 24.98 percent, up from 19.98 percent the prior month and far above the initial single-digit rate.

Let's Fix the Credit Reporting System
Many of us have gone through the drudgery of getting an error in a credit file corrected. If it's not corrected and removed legally, it
literally change our lives.

Consumer "victims" can be held hostage by credit reporting services for months, and sometimes years, depending on the nature of
problem. Many times, credit files are filled with incorrect consumer data, provided by a financial services company or creditor. It can
the fault of a data processor, who transposes a social security number, misspells a name of a person, or makes a honest mistak
posting incorrect information. Or, it can be a disagreement about how an account was eventually settled.

Sloppy credit bureau practices are at fault for errors in consumer credit reports
"The big credit bureaus and big busin

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti

NAES - North American Educational Services - Credit Card Calculator                    Page 1 of 2



Home | Services | Seminars | About Us |

NORTH AMERICAN EDUCATIONAL SERVICES
A NEVADA CORPORATION DOING BUSINESS AS DREN



Empowering Others to Change the World One Person at a Time
Never a Means to an End, But Always a Means to a Beginning

## Credit Card Minimum Payment Interest Calculator

This calculator will show you how much interest you will end up paying if you make only the minimum required payment on your credit card bill -- that is, assuming you stop charging any more to it. After seeing the shocking figures this calculator will generate, I doubt you'll want to continue allowing the credit card companies to build *your* swimming pool in *their* backyards. And as you will see from the calculated results, it's not just the interest charges you're losing, you're also losing the interest you could be earning on those charges if you were investing them rather than paying them to the credit card company!

Somewhere in your credit card disclosure statement the card company will tell you something like "your minimum payment will be 2% of the balance or $10, whichever is higher." These are the figures you will enter in Row #3 and Row #4 respectively.

| | |
|---|---|
| Enter the dollar amount charged: | |
| Enter the annual interest rate: | |
| (3) Enter the minimum percent payment amount: | 3 |
| (4) Enter the minimum dollar payment amount: | 10 |
| Compute    Reset | |
| Total interest charges you will pay: | |
| Total number of payments you will make: | |
| Total number of years until debt is paid off: | |
| Estimated foregone interest earnings: | |
| Total Estimated Opportunity Cost: | |
| Summary: | |

NAES - North American Educational Services - Credit Card Calculator     Page 2 of 2

© 2005 North American Educational Services, All Rights Reserved

Design by Alpha Soluti

Regular Mail & Certified Mail#: 7004 2890 0000 2766 5132

Chase Manhattan Bank
P.O. BOX 15299
Wilmington, DE 19850-5299

WORK OF

SEP 3 0 2005

September 26, 2005

CFD-DE 233

RE: Billing Error on Account # 4266812133912070
Amount in Dispute: $11,548.33

Dear Chase Manhattan Bank:

I am writing regarding the above account. I believe that my most recent statement, September 11, 2005 is inaccurate.

I am disputing the above amount because I believe that you failed to credit my account for prepayments you agreed to credit on the statement dated September 11, 2005. It was my understanding that when I entered into the agreement with you that you would accept my signed note(s) or other similar instrument(s) as money, credit or payment for previous account transactions, and then reflect those credits in the statement dated September 11, 2005. They do not appear in the statement and I am wondering why. The amount of the credits on the prepayments of money or credit accepted by you should be the approximate amount that I list above. I am making this billing inquiry since I am uncertain of all the dates of the prepaid credits and also since there may be additional credits that I am entitled to. Please provide me with a written explanation why these credits are not showing.

I am requesting that you provide me with an acknowledgement of this billing error and complete a full investigation by sending me a written explanation report related to the subject matter of this billing error.

I am also requesting additional documentary evidence of indebtedness of the account showing that you did not accept any note or similar instrument from me without properly crediting my account as agreed, which includes copies of the account entries that made you arrive at the recent balance shown on my statement.

I may exercise my right to withhold the disputed amount until you comply. Thank you for your time and consideration in this matter. If you have any questions please contact me immediately at the address below, but make sure your questions reference an acknowledgement to this billing error dispute.

Lastly, please remove my phone number 415-831-4485 from your solicitation list as I do not wish to do any business with Chase Manhattan Bank over the phone. I am requesting that all communications be conducted in writing, and I appreciate your honoring my request.

Sincerely,

Martha Carmack
1536-D Pershing Drive
San Francisco, CA 94129

EXHIBIT M

ENDORSED
FILED

FEB -2 2007

SUPERIOR COURT
OF CALIFORNIA
COUNTY OF SONOMA

1  JOHN BRANKLINE, in Pro Per
   8377 Windmill Farms Drive
2  Cotati, California 94931
   Tel:  (707) 795-4283
3
   Plaintiff in Pro Per
4  JOHN BRANKLINE

5

6

7

8            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF SONOMA

10 JOHN BRANKLINE,                       Case No.: SCV - 240149

11              Plaintiff,               VERIFIED COMPLAINT FOR
                                         DAMAGES AND TO VACATE
12      v.                               ARBITRATION AWARD

13                                       1. STATUTORY VIOLATIONS
                                            AND DAMAGES
14 CHASE BANK USA, N.A. as Successor in  2. BREACH OF CONTRACT
   Interest to BANK ONE DELAWARE, N.A.,  3. VIOLATIONS OF RIGHTS
15
              Defendants.                AMOUNT DEMANDED
16                                       EXCEEDS $25,000

17      COMES NOW, John Brankline, Plaintiff and Petitions this Court for an Order Vacating

18 Arbitration Award and for causes of action against Defendant and alleges as follows:

19              COUNT I – STATUTORY VIOLATIONS AND DAMAGES

20      1.      That Plaintiff is a natural person and a resident in Cotati, in the County of Sonoma,

21 State of California.

22      2.      That Defendant, Chase Bank USA, N.A., is a corporation organized in the state of

23 Delaware with its principal business location at 500 Stanton Christiana Road, Building 4, Newark,

24 19713.

25      3.      That Plaintiff and Defendant entered into a consumer contract on and about

26 September 1998.

27      4.      That the contract provided for Plaintiff to obtain a revolving open-ended account

28 with Defendant.

                              - 1 -

                      VERIFIED COMPLAINT

                         EXHIBIT N

JOHN BRANKLINE
8377 WINDMILL FARMS DRIVE
COTATI, CALIFORNIA 94931

1      5.    That the original contract was governed in part by the Truth in Lending Act 15 USC

2  § 1601 *et seq.* [TILA] by Plaintiff.

3      6.    That Defendant is familiar with the Truth in Lending Act, and any obligations it

4  would have under said Act.

5      7.    That the original contract required Defendant to respond to any TILA inquiries made

6  by Plaintiff, which were made pursuant to 15 USC §§ 1666(a) or 1666(b).

7      8.    That Plaintiff made an inquiry with Defendant, pursuant to 15 USC §§ 1666(a) and

8  1666(b), on and about March 13, 2006 as to the inaccuracies on the monthly statement and

9  requested further information and documentation.

10      9.    That Defendant received said inquiry on and about March 20, 2006.

11      10.    That Defendant has a duty to comply with any inquiry under TILA, specifically 15

12  USC § 1666(a) and 1666(b) made by Plaintiff.

13      11.    That more than ninety (90) days has elapsed since the time Defendant received the

14  billing inquiry from Plaintiff.

15      12.    That as of this date Defendant has ignored, failed and/or neglected Plaintiff's inquiry

16  by failing to respond to the same.

17      13.    That by failing to respond Defendant is prohibited under TILA, specifically 15 USC

18  § 1666(c), to proceed with any collection efforts.

19      14.    That by failing to respond to Plaintiff's billing error notice, Defendant violated 15

20  USC § 1666(c) and 12 CFR § 226.13 *et seq.*

21      15.    That Defendant's reported to the credit reporting agencies that Plaintiff was

22  delinquent on the contract.

23      16.    That as a result of Defendant's reporting the foregoing to the credit reporting

24  agencies, Defendant violated 15 USC § 1666(d) and 12 CFR 226.13 *et seq.*

25      17.    That Defendant ignored and disregarded the TILA provisions specified in 15 USC

26  § 1666(d) by proceeding with collection efforts and by filing a Claim with the National Arbitration

27  Forum (hereinafter "Forum"). A true and correct copy of the Claim is attached and incorporated by

28  reference herein as Exhibit "A."

- 2 -

18. That by filing said Claim Defendant violated 15 USC § 1666(c) and 12 CFR § 226.13 *et seq.*

19. That as a result of the foregoing Plaintiff is entitled to relief under TILA.

### COUNT II – BREACH OF CONTRACT

20. That Plaintiff hereby incorporates paragraphs 1 through 19 herein and above by this reference.

21. That Plaintiff is not currently in possession of the original contract, but will seek to obtain a copy thereof in discovery and/or will seek leave of court to amend this Complaint to incorporate a copy of said contract at that time when a copy can be ascertained.

22. That if called to testify Plaintiff will testify that the original contract between Plaintiff and Defendant did not contain any provision or clause to submit any dispute arising out of the agreement to arbitration.

23. That the original contract between Plaintiff and Defendant did not contain any provisions that would allow Defendant to change or add new terms to the original agreement to include arbitration.

24. That Plaintiff never received a copy of any change or addition of new terms to the original agreement.

25. That Defendant filed a claim against Plaintiff in the National Arbitration Forum alleging that an agreement exists containing provisions to arbitrate any dispute arising out of the agreement.

26. Plaintiff filed an objection with the National Arbitrations Forum prohibiting the Forum to arbitrate the matter. Further, Plaintiff did not submit the issue of arbitrability or meritorious issue to the Forum or the arbitrator for determination.

27. That the attorney for Defendant failed to provide a certificate on the arbitrator, the State Bar of California, or the Plaintiff, any of the information listed under CCP § 1282.4(c).

28. That pursuant to CCP § 1282.4(d), the attorney for Defendant was disqualified from serving as the attorney of record in the arbitration.

///

- 3 -

VERIFIED COMPLAINT

*JOHN BRANKLINE*
*8377 WINDMILL FARMS DRIVE*
*COTATI, CALIFORNIA 94931*

29.    Notwithstanding the foregoing, the arbitrator and Forum entered an Arbitration Award against Plaintiff in the amount of thirty-six thousand one hundred eighty one dollars ($36,181.00), as evidenced by the attached Award that is incorporated herein by this reference as Exhibit "B".

30.    Defendant served upon Plaintiff a copy of the Arbitration Award on or about January 5, 2007.

31.    That the copy of said award was not served upon Defendant pursuant to CCP § 1283.6 as required, but was instead sent to Plaintiff via First Class Mail.  (See Exhibit "B")

32.    That the Forum is in violation of CCP § 1281.96 (a), in that it does not make available any of the information set forth in CCP § 1281.96(a)(1)-(9) on its Internet Web site.

33.    That the Forum is in violation of CCP § 1284.3, in that it requires for any consumer who is a party to the arbitration to pay the fees and costs incurred by the opposing party if the consumer does not prevail in the arbitration.

34.    That Defendant obtained the Arbitration Award from the National Arbitration Forum by breaching the original contract between Plaintiff and Defendant by submitting a claim to the National Arbitration Forum without a valid agreement to arbitrate.

35.    That the arbitrator exceeded his authority to decide the matter and entered an Award against Plaintiff.  The National Arbitration Forum and Arbitrator were without subject matter jurisdiction because no valid agreement existed between the parties to arbitrate.

36.    That Plaintiff would be prejudiced and adversely affected if Defendant is allowed to proceed with confirming the Arbitration Award and a judgment is entered against Plaintiff.

37.    That Defendant had no right to force Plaintiff to arbitrate a claim.

38.    That Defendant had no right to obtain an Award against Plaintiff for any amount sought.

## COUNT III – VIOLATIONS OF PLAINTIFF'S RIGHT TO DUE PROCESS

39.    That Plaintiff hereby incorporates paragraphs 1 through 38 herein and above by this reference.

///

- 4 -

VERIFIED COMPLAINT

JOHN BRANKLINE
8377 WINDMILL FARMS DRIVE
COTATI, CALIFORNIA 94931

40.    That Plaintiff's Rights will be severely impaired if the Award is enforced in a court of law and against Plaintiff.

41.    That the award and claim was filed and entered in violation of Plaintiff's Right to Due Process under the Law.

42.    That by filing said claim, Defendant violated Plaintiff's Right to use the courts as a means to resolve the dispute.

43.    That by filing the claim, Defendant attempted to violate Plaintiff's Right to Due Process under the law.

44.    That by filing the claim, Defendant violated Plaintiff's Right to a trial by jury.

45.    That by filing the claim, Defendant violated the obligation of the original contract.

46.    That all of Defendant's actions have impaired and adversely affected Plaintiff, which is now entitled to immediate relief under the law.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands that a jury of twelve herein decide all issues.

## PRAYER

WHEREFORE, Plaintiff has no other immediate remedy under the law except to file this action. Plaintiff prays for judgment against Defendant(s) and each of them, on each and every cause of action and count as follows:

1.    For immediate relief from Arbitration Award;

2.    For unliquidated damages that may be ascertained by the court or jury;

3.    For punitive, general and special damages;

4.    For cost of this suit herein;

5.    For Violations of Rights;

6.    For such other relief as the court deems proper and demanded herein.

I, declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Dated: _01/31/2007_

By: _____

JOHN BRANKLINE, In Pro Per

- 5 -

JOHN BRANKLINE
8377 WINDMILL FARMS DRIVE
COTATI, CALIFORNIA 94931

**Exhibit A**

IN THE

NATIONAL ARBITRATION FORUM

CLAIM

Chase Bank USA, N.A.,
*as successor in interest to* Bank One Delaware. N.A.,
C/O Mann Bracken, LLC
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
USA

           CLAIMANT,

           RE:  Chase Bank USA, N.A. as successor in interest to Bank One Delaware, NA v John A

Brankline

           Forum File Number:  FA0609000792611
           Account No.:  4417124200489745

John A Brankline,
8377 WINDMILL FARMS DR

COTATI, CA 94931
USA

           RESPONDENT(S)

**RESPONDENT(S): THIS IS AN ARBITRATION CLAIM AGAINST YOU FOR MONEY OR OTHER RELIEF. YOU HAVE THIRTY (30) DAYS TO SERVE THE CLAIMANT WITH A WRITTEN RESPONSE. IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE NATIONAL ARBITRATION FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU.**

COMES NOW, Claimant, Chase Bank USA, N.A. as successor in interest to Bank One Delaware, N.A., (hereinafter, "Claimant"), and states its claim against Respondent and shows this honorable Forum the following:

1. Respondent is in breach of the Cardmember Agreement, (hereinafter, "Agreement"), to which Claimant succeeds as Obligee following its merger with Bank One Delaware, N.A.  The material provisions of the Agreement and amendments thereto are quoted below.  Counsel for Claimant will provide exemplar agreements and/or amendments via email or regular mail upon request.

2. Respondent's breach arises from his/her failure to honor the payment terms of the Agreement. Revolving credit was extended to Respondent in reliance upon the terms of the Agreement.  The debt, which is the subject of the instant Claim, arises from revolving credit extended to the Respondent in the form of credit

card account number 4417124200489745.

3.  Respondent(s) continuing default under the terms of the Agreement has resulted in a present principal debt on account due and owing to Claimant in the amount of $30735.92, as reflected in the attached account summary, plus interest accrued through the date of filing in the total amount of $338.42. Interest continues to accrue upon the principal balance due at the rate of 10.25%. The foregoing interest rate is the pre-judgement legal rate of interest authorized by the state law governing the Agreement (as quoted immediately below), to wit, the law of the State of Delaware:

    GOVERNING LAW: THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAW OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW.

    Submitted for the convenience of the tribunal is a true and correct copy of the relevant statute, 6 Del. C. § 2301, appended hereto as Exhibit "A".

4.  This account was declared as a bad debt on 2006-07-31 at which point it was 210 days delinquent. The date of the last payment received on the account was 2005-12-30. Despite repeated attempts by Claimant and claimant's counsel and/or agents to resolve this claim short of resort to the remedy sought herein, Respondent(s) has/have not paid the amounts due or otherwise made provision for an accord and satisfaction of the claim at bar.

5.  Claimant proceeds herein pursuant to the following provision of the Agreement, as amended:

    PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR SIMILAR PROCEEDING IN COURT, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR SIMILAR PROCEEDING. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR SIMILAR PROCEEDING BROUGHT BY ANYONE ELSE, OR BE REPRESENTED IN A CLASS ACTION OR SIMILAR PROCEEDING. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS). HOWEVER, EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED AND ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

    Any claim, dispute or controversy by either you or us against the other (or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other) arising from or relating in any way to your Account, transactions on your Account, our relationship, this Agreement or any provisions of this Agreement ("Claim"), including Claims regarding the applicability or validity of this arbitration clause, shall be resolved exclusively and finally by binding arbitration. For this arbitration provision, "you" and "us" include the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and of us.

All Claims are subject to arbitration, no matter what theory they are based on or what remedy they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other sources of law. Claims made and remedies sought as part of the class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis. As an exception to arbitration, you and we retain the right to pursue in a small claims court any Claim that is within that court's jurisdiction and proceeds on an individual basis.

The party bringing the Claim may select any one of three national arbitration organizations to administer the arbitration of the Claim: the National Arbitration Forum ("NAF"), JAMS/Endispute ("JAMS"), or the American Arbitration Association ("AAA"). The arbitration organization that is selected will apply its code or procedures in effect at the time the arbitration is filed, subject to this Agreement. The arbitration will be conducted before a single arbitrator. The arbitrator's authority is limited solely to the Claims between you and us alone. The arbitration will not be consolidated with any other arbitration proceeding. You and we do not agree to any arbitration on a class action or other representative basis.

If you prevail in the arbitration of any Claim against us, we will reimburse you for any fees you paid to the arbitration organization in connection with the arbitration. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered in a court of competent jurisdiction. Rules and forms may be obtained from, and Claims may be filed with, any of three organizations, as follows: the NAF at P.O. Box 50191, Minneapolis, MN USA 55405-0191, web site at www.arb-forum.com; JAMS at 1920 Main Street, Suite 300, Irvine, California 92614, web site at www.jamsadr.com; or the AAA at 335 Madison Avenue, Floor 10, New York, New York 10017, web site at www.adr.org. Any arbitration hearing at which you wish to appear will take place at a location within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1-16

This arbitration provision applies to all Claims now in existence or that may arise in the future. The arbitration provision shall survive termination of your Account as well as voluntary payment of the debt in full by you or any bankruptcy by you. But if we assign ownership of your Account to any unaffiliated third party, this arbitration provision will apply to any Claim between you and that third party only if you or that third party chooses arbitration.

6. Claimant respectfully requests an Award in its favor for the amounts reflected in Paragraph 3 herein together with the costs, fees and expenses of collection described more fully at subparagraphs A through C of this paragraph. The foregoing elements of ancillary relief are provided for by the Agreement (as quoted immediately below) and authorized by the laws of the State of Delaware.

**Default/Collection Costs:** Your Account will be in default and we may demand immediate payment of the entire amount you owe us without giving you prior notice if: (1) in any month we do not receive your Minimum Monthly Payment by the Payment Due Date; (2) you make Purchases or obtain Cash Advances in excess of your credit line; (3) you fail to comply with this Agreement; (4) there is a filing for your bankruptcy; (5) you die or become incapacitated; (6) we believe in good faith that the payment or performance of your obligations under this Agreement is impaired for any other reason. As permitted by

applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fees of such attorney. We will not be obligated to honor any attempted use of your Account if a default has occurred or we have determined to terminate your Account or limit your Account privileges (as described below). *(emphasis added)*

Submitted for the convenience of the tribunal are true and correct copies of the relevant statutes, to wit, 10 Del. C. § 3912, appended hereto as Exhibit "B" and 5 Del. C. § 951, appended hereto as Exhibit "C".

- Attorney's Fees;
- Costs of Arbitration: (i) A Filing Fee of $110 already incurred by Claimant; (ii) a Commencement Fee as may be incurred; (iii) any Administrative Fees as may be incurred; (iv) any other or further Fees as may be incurred in the course of these proceedings;
- Expenses incurred by the Claimant in serving the Respondent with this Claim.

WHEREFORE, Claimant respectfully requests the issuance of an AWARD in its favor as follows:

- In the amount of $30735.92 for the principal amount of debt due and owing from Respondent to Claimant;
- In the amount of $338.42 for interest accrued on said principal amount through the date of this filing;
- For prejudgment interest at the legal rate of 10.25% from the date of this filing through the issuance of Award;
- Attorney's Fees of $3073.59;
- All costs of Arbitration as may be incurred by Claimant in the course of these proceedings;
- Service expenses as incurred in serving this Claim upon Respondent;
- Any other or further relief that this honorable Forum deems appropriate.

The undersigned asserts, under penalty of perjury, that the information contained in this Claim and the supporting documents attached hereto are true and correct.

RESPONDENT(S) MUST SEND A WRITTEN RESPONSE TO THE NATIONAL ARBITRATION FORUM, WITH A COPY TO THE CLAIMANT, WITHIN 30 DAYS OR AN AWARD MAY BE ENTERED IN FAVOR OF THE CLAIMANT.

James D. Branton, Esq.
for the Claimant


Claimant Contact:
Mann Bracken, LLC
Attention: James D. Branton, Esq.
One Paces West, Suite 1400
2727 Paces Ferry Road
Atlanta, GA 30339
1-800-817-3214
arbitration@mannbracken.com

SUMMARY OF ACCOUNT INFORMATION

09/12/2006 - John A Brankline

ACCOUNT STATUS REPORT

Date Filed:          09/12/2006

Account Number:      4417124200489745

Primary Account Holder:   John A Brankline

Address:          8377 Windmill Farms Dr

                  Cotati, CA 94931

Home Phone:          (707) 795-4283

Work Phone:          0000000000

Secondary Account Holder:

Address:

Home Phone:

Work Phone:

Principal Balance:     $30735.92

Interest Rate:        10.25%

Last Payment:    12/30/2005

INFORMATION DRAWN FROM ACCOUNT RECORDS AND CURRENT AS OF THE DATE FILED

## NOTICE OF ARBITRATION

Dear Respondent,

AN ARBITRATION CLAIM HAS BEEN FILED AGAINST YOU.

Enclosed and served upon you is the Initial Claim. You may obtain a copy of the Code of Procedure, without cost, from the Claimant or from the Forum at WWW.ARBITRATION-FORUM.COM or 800/474-2371.

IF YOU DO NOT SERVE THE CLAIMANT AND FILE WITH THE FORUM A WRITTEN RESPONSE, AN AWARD MAY BE ENTERED AGAINST YOU. AN ARBITRATION AWARD MAY BE ENFORCED IN COURT AS A CIVIL JUDGMENT.

YOU HAVE THIRTY (30) DAYS TO RESPOND FROM RECEIPT OF SERVICE.

You have a number of options at this time. You may:

1. *Submit a written Response to the Claim*, stating your reply and defenses to the Claim, together with documents supporting your position. Your Response must be served on the Claimant and filed with the Forum. Read Forum Code of Procedure Rule 13. A Counter Claim, Cross-claim or Third Party Claim may also be served and filed, and accompanied by the fee as provided in the Fee Schedule. Forms for such Response and Claims may be obtained from the Forum. If you fail to respond in writing to the Claim, an Award may be entered against you and in favor of the Claimant and you will lose your case.

2. *Demand a Document Hearing or a Participatory Hearing*. You may request a Hearing in your Response or in a separate writing. Unless you have agreed otherwise, an In-person Participatory Hearing will be held in the Judicial District where you reside or do business. You may also request a hearing on-line or by telephone. Your written Request for a Hearing must be filed with the Forum. You must also serve a copy of your Request on the Claimant and any other Parties. Read Forum Code of Procedure Rules 25 and 26.

3. *Have other options*. You may seek the advice of an attorney or any person who may assist you regarding this arbitration. You should seek this advice promptly so that your Response can be served and filed within the time required by the Code of Procedure. If you have any questions or need help in responding, you may contact the Forum.

The Forum is an independent and impartial arbitration organization, which does not give legal advice or represent parties. THIS SUMMARY IS NOT A SUBSTITUTE FOR READING AND UNDERSTANDING THE CODE OF PROCEDURE WHICH GOVERNS THIS ARBITRATION.

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN USA 55405-0191
(952)516-6400 (800)474-2371
info@arb-forum.com
ARBITRATION-FORUM.com

# INDEX OF EXHIBITS

**A.**
6 Del. Code § 2301

**B.**
10 Del. Code § 3912

**C.**
5 Del. Code § 951

EXHIBIT A

Delaware Code : TITLE 6 Commerce and Trade : SUBTITLE II Other Laws Relating to Commerce and Trade :
**CHAPTER 23. INTEREST** : § 2301. Legal rate; loans insured by Federal Housing Administration.

1. Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon, and judgments entered after May 13, 1980, shall bear interest at the rate in the contract sued upon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time.

2. If the rate of interest specifically set forth in any bond, note or other evidence of indebtedness, exclusive of other charges, fees or discounts authorized or permitted under federal law or under any rule or regulation promulgated pursuant thereto, does not exceed the lawful rate prescribed in subsection (a) of this section, no person shall, by way of defense or otherwise, avail himself/herself of any of the provisions of this chapter, to avoid or defeat the payment of any interest or any such charges, fees or discounts, which any such person shall have contracted to pay in respect of any loan insured by the Federal Housing Administration, or the Commissioner thereof, under or pursuant to the provisions of the National Housing Act [12 U.S.C. § 1701 et seq.], approved June 27, 1934, and amendments thereto, or guaranteed by the Veterans Administration, or the administrator thereof, under and pursuant to Title 38 of the United States Code [38 U.S.C. § 3701 et seq.], and amendments thereto; nor shall anything contained in this chapter be construed to prevent recovery of any such interest or any such charges, fees or discounts from any person who shall have contracted to pay the same.

3. Notwithstanding any other provision in this chapter to the contrary, there shall be no limitation on the rate of interest which may be legally charged for the loan or use of money, where the amount of money loaned or used exceeds $100,000, and where repayment thereof is not secured by a mortgage against the principal residence of any borrower.

4. In any tort action for compensatory damages in the Superior Court or the Court of Common Pleas seeking monetary relief for bodily injuries, death or property damage, interest shall be added to any final judgment entered for damages awarded, calculated at the rate established in subsection (a) of this section, commencing from the date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.

(Code 1852, § 1160; 16 Del. Laws, c. 310, § 1; Code 1915, § 2621; 28 Del. Laws, c. 213; Code 1935, § 3101; 6 Del. C. 1953, § 2301; 52 Del. Laws, c. 277; 56 Del. Laws, c. 288, §§ 1-4; 57 Del. Laws, c. 78, § 1; 57 Del. Laws, c. 311; 59 Del. Laws, c. 439, § 1; 59 Del. Laws, c. 589, § 1; 62 Del. Laws, c. 228, § 7; 62 Del. Laws, c. 239, § 1; 70 Del. Laws, c. 186, § 1; 72 Del. Laws, c. 443, § 1.)

EXHIBIT B

Delaware Code : TITLE 10 Courts and Judicial Procedure : PART III Procedure : **CHAPTER 39. PLEADING AND PRACTICE** : § 3912. Counsel fees; recovering in actions on written instruments.

In all causes of action, suits, matters or proceedings brought for the enforcement of any note, bond, mechanics lien, mortgage, invoice or other instrument of writing, if the plaintiff or lien holder in the action, suit or proceeding recovers judgment in any sum, the plaintiff or lien holder may also recover reasonable counsel fees, which shall be entered as a part of the judgment in the action, suit or proceeding. Such counsel fees shall not in any such action, suit or proceeding, exceed 20 percent of the amount adjudged for principal and interest. Such counsel fees shall not be entered as a part of such judgment unless the note, bond, mortgage, invoice or other instrument of writing sued upon, by the terms thereof, expressly provides for the payment and allowance thereof, except in the cases of mechanics liens in which no express agreement shall be necessary in order to entitle the lien holder to reasonable counsel fees.

(27 Del. Laws, c. 286; Code 1915, § 4204; 38 Del. Laws, c. 202, § 1; Code 1935, § 4682; 10 Del. C. 1953, § 3912; 68 Del. Laws, c. 63, § 1; 70 Del. Laws, c. 186, § 1.)

EXHIBIT C

Delaware Code : TITLE 5 Banking : PART II Banks and Trust Companies : **CHAPTER 9. REGULATIONS GOVERNING BUSINESS OF BANKS AND TRUST COMPANIES** : Subchapter II. Bank Revolving Credit : **§ 951. Attorney's fees; costs.**

In the event a borrower defaults under the terms of a plan, the bank may, if the borrower's account is referred to an attorney (not a regularly salaried employee of the bank) or to a third party for collection and if the agreement governing the revolving credit plan so provides, charge and collect from the borrower a reasonable attorney's fee. In addition, following a borrower's default, the bank may, if the agreement governing the plan so provides, recover from the borrower all court, alternative dispute resolution or other collection costs (including, without limitation, fees and charges of collection agencies) actually incurred by the bank.

(63 Del. Laws, c. 2, § 4; 66 Del. Laws, c. 283, § 10; 72 Del. Laws, c. 15, § 11.)

**Exhibit B**



NATIONAL ARBITRATION
# FORUM

Chase Bank USA, N.A. as successor in interest to Bank One Delaware, NA
c/o Mann Bracken, LLC
2727 Paces Ferry Road
One Paces West, 14th Floor
Atlanta, GA 30339

**CLAIMANT(s),**

RE:    **AWARD**    Chase Bank USA, N.A. as successor in interest to Bank One Delaware, NA v John A
Brankline
File Number: FA0609000792611
Claimant Account Number: 4417124200489745

John A Brankline
8377 Windmill Farms Dr
Cotati, CA 94931

**RESPONDENT(s).**

The undersigned Arbitrator in this case FINDS and CONCLUDES:

### Case Summary

1. The Claimant has filed a Claim with the National Arbitration Forum.
2. After Proof of Service of the Claim was filed with the Forum, where no Response has been filed, the Forum mailed to Respondent a Second Notice of Arbitration.
3. The Respondent has filed a Response with the Forum and served it on the Claimant.
4. An arbitration hearing notice was duly delivered to the Parties as required by the Forum Rules.
5. The Arbitrator conducted a Hearing in this case in accordance with the Forum Rules.
6. The Parties have had the opportunity to present all evidence and information to the Arbitrator.
7. The Arbitrator has reviewed all evidence submitted in this case.

### Decision

1. The Arbitrator knows of no conflict of interests that exist.
2. This matter involves interstate commerce and the Federal Arbitration Act governs this arbitration.
3. The Claim was properly served on the Respondent by Claimant in accordance with Rule 6, including a Notice of Arbitration.
4. On or before 09/11/2006 the Parties entered into a valid, written agreement to arbitrate their dispute.
5. The Parties' Arbitration Agreement is valid and enforceable and governs all the issues in dispute.
6. This matter is arbitrable under the terms of the Parties' Arbitration Agreement and the law.
7. The matter has proceeded in accord with the applicable Forum Code of Procedure Rules.
8. The evidence submitted supports the issuance of this Award.
9. The applicable substantive law supports the issuance of this Award.

*(handwritten: FALSE, FALSE, FALSE — next to items 4, 5, 6)*

**Therefore, the Arbitrator ISSUES:**
An Award in favor of the Claimant, for a total amount of $36,181.06.

Entered and Affirmed in the State of California

*(signature)*
Honorable Richard D. Burstein, Ret.
Arbitrator

Date: 01/02/2007

### ACKNOWLEDGEMENT AND CERTIFICATE OF SERVICE

This Award was duly entered and the Forum hereby certifies that pursuant to the Parties' Arbitration Agreement, a copy of this Award was sent by first class mail postage prepaid to the Parties at the above referenced addresses, or their Representatives, on this date.

*(signature)*
Honorable Harold Kahn, Ret.
Director

Date: 01/03/2007

*L PS  2-2007 UPS - (handwritten) C/M*

**RECEIVED**

FEB 22 2007

LEGAL DEPARTMENT

John Brankline
8377 Windmill Farms Dr.
Cotati, Ca. 94931

Feb. 12, 2007

Sheriff of New Castle County
800 N. French St. 5 th Floor
Wilmington, De. 19801

Re : JOHN BRANKLINE v. CHASE BANK, USA , NA

**INSTRUCTIONS FOR SERVICE OF SUMMONS AND COMPLAINT**

To : New Castle County Sheriff ;

Please find enclosed my check for $30.00 for the service fee for copies of the
following to be served by you on Defendant, CHASE BANK, USA,NA :

1. Summons
2. Complaint

Defendant's agent for service of process is :

*TO*

CHASE MANHATTAN BANK USA, NATIONAL ASSOCIATION
500 STANTON CHRISTIANA ROAD BUILDING 4
NEWARK, DE. 19713

Please provide me with proof of service for the items listed above to my
location provided at the top of this page.

If you have any questions, please contact me immediately.
My telephone number is 707-795-4283.

Sincerely,

John Brankline

*A/JAC*

**ENDORSED**
FILED

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

FEB -2 2007

SUPERIOR COURT
OF CALIFORNIA
COUNTY OF SONOMA

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
CHASE BANK USA, N.A. as Successor in Interest to BANK ONE
DELAWARE, N.A.

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JOHN BRANKLINE

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Sonoma County Superior Court
600 Administration Drive, Room 107J
Santa Rosa, California 95403

CASE NUMBER:
*(Número del Caso)*: CV 240143

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John Brankline, (707) 795-4283
8377 Windmill Farms Drive, Cotati, California 94931

**Julia Shields**

DATE:        DENISE L. GORDON            Clerk, by _____, Deputy
*(Fecha)*  FEB 0 2 2007                      *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* CHASE BANK USA, N.A.

   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA
CIVIL DIVISION
600 ADMINISTRATION DRIVE, ROOM 107-J
SANTA ROSA, CALIFORNIA 95403-2878
(707) 565-1100
www.sonomasuperiorcourt.com

ENDORSED
(FOR COURT USE ONLY)
FILED

FEB -2 2007

SUPERIOR COURT
OF CALIFORNIA
COUNTY OF SONOMA

NOTICE OF ASSIGNMENT TO ONE JUDGE FOR ALL PURPOSES,
NOTICE OF CASE MANAGEMENT CONFERENCE,
and ORDER TO SHOW CAUSE
☐ Collections (see footnote)

Case number:
SCV - 240149

**A COPY OF THIS NOTICE MUST BE SERVED WITH THE SUMMONS AND COMPLAINT
AND WITH ANY CROSS-COMPLAINT**

1. **THIS ACTION IS ASSIGNED TO HON.** GARY NADLER **FOR ALL PURPOSES.**
   Pursuant to California Rules of Court, Rule 201(f)(7), the assigned judge's name must appear below the number of the case and the nature of the paper on the first page of each paper presented for filing.

2. A Case Management Conference has been set at the time and place indicated below:

   Date: JUN 0 5 2007    Time: 1:30pm    Courtroom: 2D
   Location:    3055 CLEVELAND AVE STE 200
   SANTA ROSA CA 95403

3. No later than 15 calendar days before the date set for the case management conference or review, each party must file a case management statement [Judicial Council form #CM-110] and serve it on all other parties in the case. In lieu of each party's filing a separate case management statement, any two or more parties may file a joint statement.

4. At the conference, counsel for each party and each self-represented party must appear personally or by telephone [California Rules of Court, Rule 298(c)(2)]; must be familiar with the case; and must be prepared to discuss and commit to the party's position on the issues listed in California Rules of Court, Rule 212(e)-(f).

5. Pre-approved dispositions are recorded three (3) court days prior to the case management conference. These may be obtained by calling (707) 565-2770 or by going to http://www.sonomasuperiorcourt.com/tentative/index.php.

**ORDER TO SHOW CAUSE**

To Plaintiff(s), Cross-complainants, and/or their attorneys of record:
If, on the date shown above, you are not in compliance with timely filing requirements stated in California Rules of Court, Rules 201.7(b), 201.7(c), 201.7(g), 201.7(h), 201.7(i) and/or 212(g), you must then and there show cause why this Court should not impose monetary and/or terminating sanctions.

_____

*  **Telephone appearances are not allowed.** Case Management Conferences in Collections cases incorporate a settlement conference. Counsel/parties *with settlement authority* are required to appear in person.

CV-1 [Rev. November 29, 2004 ] NTC OF ASSIGNMENT OF 1 JUDGE FOR ALL PURPOSES, NTC OF CMC & OSC  CRC, Rules 212-213, 227, 298; CCP§§177.5, 583.460

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| **ADR INFORMATION SHEET**<br>[Sonoma County Superior Court Rules, Rule 16] | | CASE NUMBER: |
|---|---|---|
| (Check one):  ☐ UNLIMITED CASE<br>(Amount demanded exceeds $25,000) | ☐ LIMITED CASE<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

## NOTICE TO ALL PARTIES AND THEIR ATTORNEYS

The policy of the Sonoma County Superior Court is:
"The formal litigation of legal claims and disputes is expensive and time consuming. The overall results achieved by some or all of the parties are often unsatisfactory. There are many modern alternatives to formal court litigation which are less expensive, less time consuming, and more beneficial to the parties. It is therefore the firm policy and goal of this court to encourage the parties in all civil cases to explore and pursue private dispute resolution alternatives at the earliest possible date." (Local Rule 16.1.)

Although most (90-98%) cases do settle, many settlements come only after a considerable amount of time, money, and resources have been expended. Such expenditures, as well as the adversarial nature of litigation, can be a disincentive to settlement. The Sonoma County Superior Court encourages the use of Alternative Dispute Resolution (ADR) as early as possible after the parties become aware of a dispute.

Most ADR processes are voluntary and are paid for by the parties themselves, but ADR has proved in many cases to be faster, cheaper, and more effective than traditional litigation.

## ADVANTAGES OF ADR:

The filing of your complaint or answer may be just the beginning of the costs that you will incur during the course of your lawsuit. Lawsuits can be extremely costly. By utilizing ADR methods early in the course of your case, you may significantly reduce these costs by either resolving the case before expensive discovery and trial proceedings are commenced or by narrowing the scope of your discovery by identifying disputed and undisputed factual and legal issues.

ADR can be a fast, economical, efficient, and effective way to resolve civil cases, and most litigants report satisfaction with the process. ADR procedures can be scheduled at your convenience and can be completed in a fraction of the time required for traditional litigation. The cost of ADR will depend on the procedure and the provider you select, and the cost is typically less than litigation.

Most ADR processes are confidential but can result in enforceable agreements. Many ADR processes will give you an opportunity to test the strengths and weaknesses of your case without adverse impact in the event of a trial. Depending upon the method of ADR you select, it may be the last chance for you to control the outcome of your dispute before you place the decision in the hands of a judge or jury.

## METHODS OF ADR:

**A. MEDIATION:** Mediation is one of the most frequently used methods of ADR because it is informal, quick, convenient and confidential. In this process the parties select a neutral mediator who facilitates the identification of issues and areas of agreement and assists in finding a resolution or settlement of the dispute. Since mediation requires the agreement of the parties to resolve the matter, control of the proceedings and a determination of the settlement terms remains completely in the parties' hands. The mediator remains neutral and assists the parties in arriving at terms that are mutually agreeable.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 ADMINISTRATION DRIVE, ROOM 107-J<br>SANTA ROSA, CALIFORNIA 95403-2878 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| STIPULATION AND ORDER REFERRING MATTER TO ALTERNATIVE DISPUTE RESOLUTION | CASE NUMBER: |
|---|---|
| (Check one):   ☐  **UNLIMITED CASE**<br>(Amount demanded exceeds $25,000)    ☐  **LIMITED CASE**<br>(Amount demanded is $25,000 or less) | Date:<br>Time:<br>Location:<br>Assigned Judge: |

The parties hereby stipulate to refer the case to the following Alternate Dispute Resolution Process:

☐  Mediation                                   ☐  Non-binding Private Arbitration
☐  Binding Private Arbitration           ☐  Private Settlement Conference
☐  Early Neutral Evaluation              ☐  Judicial Arbitration

The ADR process will be conducted by (name of individual): _____

   Provider's Address: _____

   Provider's Telephone: _____    Fax: _____    E-mail address: _____
   ☐  No agreement
The ADR process will be conducted on (date): _____
   ☐  No agreement

☐   The parties have reached agreement as to the payment of fees of ADR provider.
☐   The parties have not reached agreement as to the payment of fees of ADR provider.

---

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

**(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

---

Type or print name of ☐ Party without attorney ☐ Attorney for
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant

**(Date and Sign)** Attorney or party without attorney (Sign in blue ink)

☐   Additional signatures are attached

CV-7 [Rev. June 14, 2004]          STIPULATION AND ORDER REFERRING MATTER TO ADR          SCR, Rules 16 & 22

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

CM-110

FOR COURT USE ONLY

TELEPHONE NO.:                  FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

## CASE MANAGEMENT STATEMENT

(Check one):   ☐ UNLIMITED CASE          ☐ LIMITED CASE
                    (Amount demanded              (Amount demanded is $25,000
                    exceeds $25,000)               or less)

CASE NUMBER:

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:               Dept.:          Div.:          Room:
Address of court *(if different from the address above):*

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.   The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
       (1) ☐ have not been served *(specify names and explain why not):*
       (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*
       (3) ☐ have had a default entered against them *(specify names):*
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a.   Type of case in ☐ complaint ☐ cross-complaint        *(describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

CASE MANAGEMENT STATEMENT

Page 1 of 4
Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

| PLAINTIFF/PETITIONER: | CASE NUMBER: | CM-110 |
|---|---|---|
| DEFENDANT/RESPONDENT: | | |

10. d.   The party or parties are willing to participate in *(check all that apply):*
    (1) ☐ Mediation
    (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐ Binding judicial arbitration
    (5) ☐ Binding private arbitration
    (6) ☐ Neutral case evaluation
    (7) ☐ Other *(specify):*

    e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

11. **Settlement conference**
    ☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

12. **Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

13. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
    Status:

14. **Related cases, consolidation, and coordination**
    a. ☐ There are companion, underlying, or related cases.
       (1) Name of case:
       (2) Name of court:
       (3) Case number:
       (4) Status:
       ☐ Additional cases are described in Attachment 14a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

15. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

16. **Other motions**
    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Page 3 of 4

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name & Address*): | FOR COURT USE ONLY |
|---|---|
| Telephone No.:                    FAX No.: | |
| ATTORNEY FOR (Name):                    Bar No. | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA<br>600 Administration Drive<br>Santa Rosa, CA 95403<br>Telephone: (707) 565-1100 | |
| PLAINTIFF(S)/PETITIONER(S): | |
| DEFENDANT(S)/RESPONDENT(S): | CASE NUMBER: |

## NOTICE OF SELECTION AS MEDIATOR IN COURT-CONNECTED MEDIATION
(Sonoma County Superior Court Local Rule 16)

Name of Mediator Selected: _____

     **PLEASE TAKE NOTICE** that the above-referenced matter is subject to Sonoma County Superior Court Local Rule 16 (Rules Applicable to Alternative Dispute Resolution (ADR)). The parties have selected you to serve as the mediator in this matter. Sonoma County Superior Court has a voluntary, market rate mediation program. All mediations conducted in cases covered by Local Rule 16 are court-connected mediations and are subject to the provisions of California Rules of Court, Rules 3.850 et seq. It is your obligation to familiarize yourself with Local Rule 16 and California Rules of Court, Rules 3.850 et seq. before the mediation. **PLEASE NOTE:** you are required to have the parties complete an Attendance Sheet for Court-Program Mediation of Civil Case (Alternative Dispute Resolution) (Judicial Council form ADR-107) in accordance with California Rules of Court Rule 3.860. The form is available at the web site of the California Courts <u>www.courtinfo.ca.gov</u>.

     If you <u>are not</u> a member of the Sonoma County Superior Court panel of mediators, in order to serve as mediator in this case, you must complete the acceptance below (see CRC Rule 3.851(a) (2)), sign it in the space provided, and file the completed Notice *with your original signature* with the Court not less than five days before commencement of the mediation. Please also provide a courtesy copy of the completed and signed Notice to the ADR Program Coordinator, 1450 Guerneville Road, Building G, Santa Rosa, California 95403 or by facsimile transmission to (707) 565-7059.

     If you are mediating a case referred to court-connected mediation during calendar year 2007, regardless of the date of the mediation, you are required to complete and return a Mediator's Questionnaire (Sonoma County Superior Court form CV-36) within five (5) days after completion or other termination of the mediation. The completed questionnaire may be mailed or faxed to ADR Program Coordinator at the above address or FAX number. The plaintiff should provide the Mediator's Questionnaire to you. The questionnaire is also available on the web site of the Sonoma County Superior Court <u>www.sonomasuperiorcourt.com</u>.

     If you have any questions regarding your selection or service as a mediator in this matter or about the Sonoma County Superior Court ADR Program, please feel free to contact the ADR Program Coordinator at (707) 565-7000 or <u>ADR@sonomacourt.org</u>.

## MEDIATOR'S ACCEPTANCE

I, _____ hereby agree to mediate the above-captioned matter subject to
       (print name)

the conditions stated in this notice.

Dated: _____     _____
                                             (Mediator's Signature)

# NOTICE

## SONOMA COUNTY SUPERIOR COURT
## CIVIL DIVISION PRO TEM JUDGE PROGRAM

This is to advise that the Civil Division's Pro Tem Judge Program is available to those civil litigants who wish to expedite trial by stipulating to the use of an attorney to serve as Pro Tem Judge. The court maintains a Pro Tem Judge panel, which consists of attorneys sworn by the Court and willing to serve in this capacity. Parties may stipulate to a trial by a Pro Tem Judge of their choice and may inform the Court of such a stipulation by contacting Connie Origer, the Pro Tem Judge Program Coordinator, at (707) 565-6430.

The Program offers three primary benefits to litigants: (1) the date and location of trial can often be scheduled by stipulation of the parties; (2) the trial will take place on the agreed date for trial, thus eliminating the need to trail other cases, and; (3) the trial can be scheduled for full days on a 5 day per week basis, thus shortening the time to try the case. The Program is available for both jury and court trials.

For cases that are tried in 5 days or less (9:00 a.m. to 5:00 p.m., jury or non-jury), the Pro Tem Judge serves at no cost to the parties. For trials that exceed 5 days in length, the parties and the Pro Tem Judge are obliged to agree to a daily fee, not to exceed $1,200 per day, for each full or partial day of trial beginning with the 6th day of trial. Additionally, the Court will charge the parties $656.72 for each day of trial for the Clerk and Court Reporter. The Court discourages the use of overtime and will charge an additional cost of $123.14 for each hour or portion thereof exceeding 8 hours in any day. The parties are also responsible for the payment of jury fees as in any other civil case. Cases in which there are fee waivers are eligible for the Program.

The Court is enthusiastic about this Program and urges all counsel to discuss the availability of the Program and the feasibility of its use with opposing counsel. Counsel must also obtain permission from clients to participation in the Program. To participate in the Program, contact Ms. Origer as soon as possible to discuss trial dates. Ms. Origer will generate and mail all required stipulations and orders with respect to the Program. Parties may obtain additional information on this program by contacting Ms. Origer or by reviewing the court's website at www.sonomasuperiorcourt.com.

Plaintiff is ordered to serve this Notice on all parties and to certify by proof of service filed with the Court that such service has been accomplished within 60 days of the filing of the Complaint.